**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| WILLIE BREWER, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 11-1206 (RC) |
| | : | | |
| v. | : | Re Document No.: | 4 |
| | : | | |
| DISTRICT OF COLUMBIA *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**DENYING THE DEFENDANTS' MOTION TO DISMISS**

**I. INTRODUCTION**

This matter comes before the court on the defendants' motion to dismiss.  The plaintiff is

a teacher who worked for the District of Columbia Public Schools ("DCPS") before being

dismissed from his employment pursuant to a reduction in force ("RIF").  He brings suit against

the District of Columbia and the former DCPS Chancellor, Michelle Rhee ("defendant Rhee"),[1]

alleging age discrimination in violation of the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. §§ 631-34.  The defendants move to dismiss the plaintiff's claims under

Federal Rule of Civil Procedure 12(b)(6), asserting that such claims are barred for failure to

exhaust administrative remedies, as well as by res judicata, collateral estoppel, and parallel

litigation.  For the reasons discussed below, the court denies the defendants' motion.

---

[1]    The plaintiff's complaint does not make clear whether former Chancellor Rhee is sued in her
official capacity or individual capacity.  If sued in her official capacity, her successor must be
substituted as the appropriate defendant.  *See* FED. R. CIV. P. 25(d).  If sued in her individual
capacity, the docket does not reflect that service has been accomplished in that capacity.
Moreover, because more than 120 days have elapsed since the filing of the complaint, defendant
Rhee will be dismissed from this action if proof of individual capacity service is not filed within
14 days of this opinion. FED. R. CIV. P. 4(m).

## II.  FACTUAL ALLEGATIONS & PROCEDURAL BACKGROUND[2]

The plaintiff is a 53-year-old teacher who worked for DCPS for 28 years before being terminated in October of 2009 under a RIF, pursuant to the D.C. Municipal Regulations, 5-E DCMR §§ 1501, 1503.  Compl. ¶ 4.  The plaintiff claims that the defendants engaged in age discrimination and used the RIF as a pretext to remove 200 DCPS teachers—the vast majority of whom were over 40 years old—and replace them with younger teachers.  *Id.* ¶¶ 9-10.  The defendants cited inadequate budgetary funds or poor performance when terminating the older teachers.  *Id.* ¶ 10.  In that vein, the plaintiff was subjected to the RIF after being adversely evaluated in a Competitive Level Documentation Form.  *Id.* ¶ 7.  Though he was an instrumental music teacher, his RIF competitive standing was governed by the standards for a vocal music teacher, a position that required a skill set different from his own.  *Id.* ¶¶ 7-8.  As a result, the plaintiff was terminated.  *Id.* ¶¶ 5-7.

According to the plaintiff, former Chancellor Rhee "personally planned and directed the implementation of the RIF separations," a "strategy" she chose after unsuccessful attempts to persuade the City Council to allow her to terminate DCPS employees without cause.  *Id.* ¶¶ 14-16.  She then publicly commented that many of the RIF separations—an action justified on the basis of budget shortfalls—were necessary because the separated teachers had been low performers, and continued carrying out the separations even after the D.C. Council obtained funds to address the budget shortfalls.  *Id.* ¶¶ 19-20.

Further, under the D.C. Municipal Regulations, an agency must maintain a list of employees who were separated under a RIF for one year after their terminations.  *Id.* ¶ 11.  If a qualified person on the list is available for an opening within his or her discipline, that person

---

[2]     When considering a Rule 12(b)(6) motion to dismiss, the court accepts as true the plaintiff's version of events.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

must have priority in filling the position over a new appointment, transfer, or former employee

who is not on the list. *Id.* ¶ 12.  Through the fall of 2010, however, the defendants hired

hundreds of new DCPS teachers and employees, "most of whom were much younger than the

plaintiff and were just beginning their careers." *Id.* ¶ 13.  Because the plaintiff never received

priority appointment before the "new, transferred, or non-listed teachers who were hired for

positions of his type," the defendants either failed to maintain the requisite reemployment

priority list, did not include the plaintiff on it, or did not use the list. *Id.* ¶¶ 14-16.

The plaintiff filed a complaint with the Equal Employment Opportunity Commission

after he was terminated ("EEOC").  *See* Pl.'s Mot., Ex. A, at 1.  In March of 2011, the EEOC

issued him a right-to-sue letter, *id.*, and he then filed an action in this court in June of 2011.  The

plaintiff alleges age-based discrimination in contravention of the ADEA.  *Id.* ¶¶ 23-24.  In

response, the defendants have filed a motion to dismiss the plaintiff's claims for failure to state a

claim.  The court now turns to the parties' arguments and the applicable legal standards.[3]

### III.  ANALYSIS

#### A.  Legal Standard for a Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal

sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The

motion does not test a plaintiff's ultimate likelihood of success on the merits, but rather, whether

a plaintiff has properly stated a claim.  *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).  The

complaint is only required to set forth a short and plain statement of the claim, in order to give

---

[3]    The plaintiff also alleges that he was discriminated against in contravention of Title VII of the
Civil Rights Act of 1964 ("Title VII"), codified at 42 U.S.C. § 2000e-2(k)(1)(A)(i).  Yet there is
no basis for alleging an age-based discrimination claim within the ambit of Title VII.  *See* 42
U.S.C. §§ 2000e *et seq.*  The plaintiff thus does not make out a viable Title VII claim.

the defendants fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

A court considering this type of motion presumes the factual allegations of the complaint to be true and construes them liberally in the plaintiff's favor. *See, e.g.*, *United States v. Philip Morris, Inc.*, 116 F. Supp. 2d 131, 135 (D.D.C. 2000). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511–14 (2002), nor to plead law or match facts for every element of a legal theory, *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal citations omitted). Nonetheless, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 562 (2007). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citing *Twombly*, 550 U.S. at 556).

The court need not accept as true inferences unsupported by facts set out in the complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353 F.3d 36, 39 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

## B.  Legal Standard for a Rule 56 Motion for Summary Judgment

Because the court will rely on documents outside of the pleadings, the defendants'

12(b)(6) motion must be treated as a motion for summary judgment under Federal Rule of Civil

Procedure 56.  *Colbert v. Potter*, 471 F.3d 158, 164 (D.C. Cir. 2006); FED. R. CIV. P. 12(d).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a); *see also Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir.

1995).  A "genuine dispute" is one whose resolution could establish an element of a claim or

defense and, therefore, affect the outcome of the action.  *Celotex*, 477 U.S. at 322; *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To determine which facts are "material," a court

must look to the substantive law on which each claim rests.  *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable

inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Id.* at 255.  A nonmoving party, however, must establish more than "the mere existence of a

scintilla of evidence" in support of its position.  *Id.* at 252.  To prevail on a motion for summary

judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing

sufficient to establish the existence of an element essential to that party's case, and on which that

party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

## C.  Exhaustion of Administrative Remedies

### 1.  EEOC

The defendants contend that the plaintiff has failed to exhaust his administrative remedies

because he did not timely  file a complaint with the Equal Employment Opportunity Commission

("EEOC").  Defs.' Mot. at 5.  In response, the plaintiff has attached to his opposition a right-to-

sue letter that he received from the EEOC. *See* Pl.'s Opp'n, Ex. A, at 1. In order to bring an

ADEA action in court, a plaintiff must first file a charge of discrimination with the EEOC.

*Washington v. Wash. Metro. Area Transit Auth.*, 160 F.3d 750, 752 (D.C. Cir. 1998). Upon

receiving a right-to-sue letter from the EEOC, the plaintiff is allowed 90 days to file the ADEA

action in court. 29 U.S.C. § 626(e). This period begins the day after the letter is received and

expires on the 90th day thereafter. *See* FED. R. CIV. P. 6(a)(1); *Akridge v. Gallaudet Univ.*, 729

F. Supp. 2d 172, 178 (D.D.C. 2010). Absent evidence indicating otherwise, courts generally

assume that an EEOC right-to-sue letter was mailed on the date that it was issued. *Baldwin Cnty.*

*Welcome Ctr. v. Brown,* 466 U.S. 147, 148 (1984); *Lucas-Bolden v. Potter*, 2005 WL 3273725,

at \*3 (D.D.C. Sept. 29, 2005). If the delivery date is unknown, it is presumed that the letter was

received 3 to 5 days after being mailed, which includes counting weekends and holidays. *Ruiz v.*

*Vilsack*, 763 F. Supp. 2d 168, 171 (D.D.C. 2011); *Akridge*, 729 F. Supp. 2d at 178. The 90-day

period then commences, and if the 90th day falls on a weekend or holiday, the statutory period

ends on the following business day. FED. R. CIV. P. 6(a)(1).

  In this case, the plaintiff has provided the EEOC's right-to-sue letter, which states that it

was issued on March 29, 2011. Pl.'s Opp'n, Ex. A, at 1. Because neither party indicates

otherwise, it is assumed that the letter was mailed that same day. Further, because the plaintiff

provides no evidence of the delivery date, the court will presume that the plaintiff received the

letter 3 to 5 days later, or some time between April 1-3, 2011. Ninety days after April 3, 2011 is

July 2, 2011. As July 2 was a Saturday, the plaintiff had until the following business day,

Tuesday, July 5, 2011 to file an action.[4] Because the plaintiff filed his complaint on June 29,

---

[4]  Even if the court assumed that the plaintiff received the letter 3 days after it was mailed, as opposed to 5, his action is still timely filed. Under this theory, he would have received the letter on April 1, and the 90-day period would have ended on June 30. Because he filed suit on June 29, 2011, he would have fallen within the statutory period.

2011, he exhausted his administrative remedies and his claims are considered timely.[5]

## 2.  D.C. Municipal Regulations and the CMPA

The defendants also argue that the plaintiff has failed to exhaust his administrative remedies under the D.C. Municipal Regulations.  Defs.' Mot. at 6.  The statutory sections that the defendants cite, however, describe the procedure by which an agency must maintain an employee reemployment priority list in the event of a RIF, not how a separated employee must satisfy certain measures before filing suit in court.  6-B DCMR §§ 2427.1, 2427.4, 2427.6, 2428.1.  The defendants further state that under the D.C. Code, an employee "may appeal . . . a reduction in force" with the Office of Employee Appeals ("OEA"), but it puts forward nothing indicating that this type of appeal is required.  *See* D.C. Code §§ 1-606.03, 1-624.04.  Indeed, while an employee grievance must typically be appealed to the OEA pursuant to the Comprehensive Merit Personnel Act, "that particular statutory remedy does not foreclose" a plaintiff from bringing claims arising under the laws of the United States, as this court has original jurisdiction over such claims.  *Matthews v. District of Columbia*, 675 F. Supp. 2d 180, 185 (D.D.C. 2009); *see also Savage v. District of Columbia,* 2004 U.S. Dist. LEXIS 4422, *11-12 (D.D.C. Mar. 19, 2004); *Crockett v. D.C. Metro. Police Dep't*, 293 F. Supp. 2d 63, 67 D.D.C.

---

[5]      The defendants also state that the plaintiff failed to file his complaint with the D.C. Office of Human Rights ("DCOHR") before bringing suit.  Def.'s Mot. at 5, 8.  In this Circuit, before commencing an ADEA action in court, a plaintiff must first file a discrimination charge with the EEOC, as well as a charge with the appropriate state agency.  *Schuler v. PricewaterhouseCoopers, LLP*, 514 F.3d 1365, 1367-68 (D.C. Cir. 2008).  Under the EEOC's "worksharing agreement" with the DCOHR, the EEOC sends complaints that it receives to the DCOHR, thereby satisfying the state filing requirement.  *Id.* at 1372-74.  Because the plaintiff here filed a complaint with the EEOC, he is deemed to have fulfilled the state filing requirement.

2003).  The plaintiff here was thus not required to exhaust any administrative remedies with the

OEA before bringing federal statutory claims in this court.[6]

### D.  Res Judicata and Parallel Litigation

The defendants contend that because the plaintiff filed an action in the Superior Court of

the District of Columbia ("Superior Court") alleging claims arising out of the same set of facts as

does the instant complaint, his claims in this court are barred by res judicata, collateral estoppel,

and parallel litigation.  Defs.' Mot. at 8.  "The doctrine of res judicata prevents repetitious

litigation involving the same causes of action or the same issues."  *I.A.M. Nat'l Pension Fund v.*

*Indus. Gear Mfg. Co.*, 723 F.2d 944, 946 (D.C. Cir. 1983).  Res judicata has two distinct aspects

– claim preclusion and issue preclusion (commonly known as collateral estoppel) – that apply in

different circumstances and with different consequences to the litigants.  *NextWave Pers.*

*Commc'ns, Inc. v. Fed. Commc'ns Comm'n*, 254 F.3d 130, 142 (D.C. Cir. 2001); *Novak v. World*

*Bank*, 703 F.2d 1305, 1309 (D.C. Cir. 1983).

Under claim preclusion, "a final judgment on the merits of an action precludes the parties

or their privies from relitigating issues that were or could have been raised in that action."  *Drake*

*v. Fed. Aviation Admin.*, 291 F.3d 59, 66 (D.C. Cir. 2002) (quoting *Allen v. McCurry*, 449 U.S.

90, 94 (1980)).  Here, the plaintiff filed an action in the Superior Court in November of 2010,

before he filed suit in this court in June of 2011.  Defs.' Mot., Ex. A, at 1.  In the Superior Court

case, the plaintiff outlined essentially the same facts as he has in the instant complaint, and

alleged several common law and other claims.  *Id.* at 3-4.  Although he amended his Superior

Court complaint on two separate occasions, he ultimately filed a praecipe for voluntary dismissal

---

[6]     Although not crystal clear, the defendants seem to contend that the plaintiff has failed to exhaust
his administrative remedies with regard to constitutional claims pursuant to 42 U.S.C. § 1983
("Section 1983").  Def.'s Mot. at 6.  Because the complaint alleges no Section 1983 claims,
however, such an argument would be misplaced.

without prejudice in June of 2012.  Praecipe, *Brewer v. Rhee et al.*, No. 2010-CA-008565-B

(D.C. Super. Ct. June 20, 2012), No. 2; *see Weil v. Markowitz*, 829 F.2d 166, 173 n.15 (D.C. Cir.

1987) ("We are free to take judicial notice of [a] related proceeding in another court.").[7]

A final judgment requires that a court decide an issue of fact or law necessary to its

judgment.  *Bode & Grenier, LLP v. Knight*, 2010 WL 908934, at \*5 (D.D.C. Mar. 10, 2010).  If

the prior action has been dismissed without prejudice, there has been no final judgment on the

merits, and a plaintiff will not be precluded by the doctrine of res judicata from having his claims

heard on the merits in a separate court.  *Dozier v. Ford Motor Co.*, 702 F.2d 1189, 1194 (D.C.

Cir. 1983); *McAlister v. Potter*, 843 F. Supp. 2d 117, 121 (D.D.C. 2012).  Thus, because the prior

Superior Court action was dismissed without prejudice, there was no final judgment on the

merits, and the plaintiff's ADEA claims in this court are not barred by claim preclusion.  *See*

*Ponder v. Chase Home Finance, LLC*, 2012 WL 1931237, at \*2-3 (D.D.C. May 23, 2012)

(holding that dismissal without prejudice of a prior case arising from the same set of facts was

not a final judgment, and that the plaintiff's claims where thus not barred by res judicata);

*Knight*, 2010 WL 908934, at \*5 (determining that res judicata did not apply to the instant action

because there was no evidence of a final judgment on the merits from the prior action).

Similarly, under collateral estoppel, or issue preclusion, "once a court has decided an

issue of fact or law necessary to its judgment, that decision may preclude relitigation of the issue

in a suit on a different cause of action involving a party to the first case." *Yamaha Corp. of Am.*

---

[7]     The defendant base certain arguments in their motion on the existence of the Superior Court
        case, but failed to inform this court that that case has since been dismissed.  As a general rule, the
        court "must rely on counsel to present issues fully and fairly," and the defendants here have failed
        in their "duty to inform the [c]ourt of any development which may conceivably affect the
        outcome" of the litigation.  *Fusari v. Steinberg*, 419 U.S. 379, 390-91 (1975) (Burger, C.J.,
        concurring).  This is particularly significant in this case because "government attorneys [] have
        special responsibilities" to ensure that the court is aware of "significant events that may bear
        directly on the outcome of the litigation." *Douglas v. Donovan*, 704 F.2d 1276, 1279 (D.C. Cir.
        1983).

*v. United States*, 961 F.2d 245, 254 (D.C. Cir. 1992) (quoting *Allen*, 449 U.S. at 94).  Thus, as collateral estoppel "prevents the relitigation of any issue that was raised and decided in a prior action," *Novak*, 703 F.2d at 1309, the plaintiff's claims here are not barred because the prior action was dismissed without prejudice and consequently no issues of fact or law had been decided.  *See Ponde*, 2012 WL 1931237, at *2-3 (holding that the plaintiff's claims were not barred by issue preclusion because the prior action had been dismissed without prejudice).[8]

Finally, the defendant argues that the plaintiff's claims should be dismissed under a theory of parallel litigation because he has a separate cause of action in the Superior Court.  Defs.' Mot. at 8.  "District courts have the discretion to . . . dismiss a pending suit when parallel litigation that is factually related is ongoing in another forum."  *Holland v. ACL Transp. Serv., LLC*, 815 F. Supp. 2d 46, 55 (D.D.C. 2011).  Essentially, courts should "avoid duplicative litigation."  *Id.* (internal citation omitted).  When the defendant filed the instant motion in this matter, the plaintiff's action in the Superior Court was still pending, but in the months since, that case has been voluntarily dismissed.  Thus, because there is no longer an ongoing related action in another jurisdiction, there is no parallel litigation, and therefore, no basis for the court to dismiss this matter.  *See id.* (determining that because the related case in a separate jurisdiction was no longer "ongoing" after it was transferred and consolidated with the initial case, the plaintiff's claims were not barred by parallel litigation).

---

[8]      Moreover, some courts have held that for purposes of issue preclusion, an issue that has been previously adjudicated in a separate action between the parties can have conclusive effect just like a final judgment—even as other issues have not been decided.  *See, e.g.*, *Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000); *Miller Brewing Co. v. Joseph Schlitz Brewing Co.*, 605 F.2d 990, 996 (7th Cir. 1979); *Lummus Co. v. Commonwealth Oil Ref. Co.*, 297 F.2d 80, 89 (2d Cir. 1961).  Yet even if this court had discretion to give some preclusive effect to a non-final order by the Superior Court, it would not do so here because the Superior Court never reached any of the issues that would preclude an age discrimination claim.

## IV. CONCLUSION

For the foregoing reasons, the court denies the defendants' motion to dismiss.  An order

consistent with this Memorandum Opinion is issued this 20th day of September, 2012.


RUDOLPH CONTRERAS
United States District Judge