**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| WILLIE BREWER | ) | |
|  | ) | |
| Plaintiff, | ) | |
|  | ) | |
| v. | ) | Case No. 1:11-cv-01206 (KBJ) |
|  | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
|  | ) | |
| Defendants. | ) | |
|  | ) | |

**THE DISTRICT OF COLUMBIA'S REPLY TO PLAINTIFF'S RESPONSE TO THE DISTRICT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Defendant District of Columbia ("the District"), by and through undersigned counsel, hereby respectfully submits this Reply to Plaintiff's Response to the District's Motion to Dismiss Plaintiff's Complaint or, in the Alternative, for Summary Judgment.

**I.    Plaintiff's claims against the District are barred by the doctrine of *res judicata*.**

   **A.    Claim preclusion bars any claims that could have been brought in the initial action**.

Plaintiff argues that res judicata is inapplicable to the instant case because "the legal theories presented, and thus standards for determining the unlawfulness of the mass discharge, are dramatically different in" this case than those brought by the Washington Teachers Union ("the Union").  Pl.'s Resp. at 2, ECF # 27.  Plaintiff also argues that the issues pled in his Supplemental Complaint "were not pled or asserted in the Union litigation."  Pl's Resp. at 4.

1

However, this argument only responds to *issue* preclusion.  While the District has a strong issue preclusion argument, the District premised its argument on *claim* preclusion.[1]

Under the doctrine of claim preclusion, or *res judicata*, "a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or *could have been* raised in that action." *Allen v. McCurry*, 449 U.S. 90, 94 (1980) (emphasis added).  Claim preclusion bars Plaintiff from relitigating "any ground for relief which [he] already [has] had an opportunity to litigate *even if [he] chose not to exploit that opportunity . . . .*" *Hardison v. Alexander*, 655 F.2d 1281, 1288 (D.C. Cir. 1981) (emphasis added).

In the instant case, Plaintiff, through his Union, had an opportunity to bring all of his claims in the previous suit.  *See Am. Fed'n of Gov't Emp. TSA Local 1 v. Hawley*, 481 F. Supp. 2d 72, 75 (D.D.C. 2006) (noting that union had brought an ADEA claim on behalf of its members alleging that RIF was pretext for age discrimination).  But Plaintiff's Union chose not to bring the instant claims in the previous suit.  Accordingly, the doctrine of claim preclusion prevents Plaintiff from now bringing any claims that his Union could have raised on his behalf.

---

[1]    Plaintff's argument still fails to defeat issue preclusion.  Issue preclusion, or collateral estoppel, "bars the re-litigation of issues determined in a prior action 'where (1) the issue was actually litigated; (2) was determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the party; (4) under circumstances where the determination was essential to the judgment.'" *DeWitt v. District of Columbia*, 43 A.3d 291, 300 (D.C. 2012).

In the WTU case, the issue of whether the reduction in force ("RIF") implemented by then Chancellor Rhee was lawful was necessarily decided by a final judgment after years of litigation.  *See* Def.'s Mot. for Summ. J. at Ex. # 4 p. 4. The court noted that "[t]he undisputed facts establish that the RIF was implemented in response to a shortfall that had been created in the DCPS budget shortly before the beginning of the school year." *Id.* at 3.  As a result, Plaintiff's attempt to differentiate between whether the RIF was necessary and whether it was a reasonable option for the Chancellor is immaterial here.  Pl.'s Resp. 2.  Were the RIF to have been unlawful—for *any* reason—it would have actually been a mass discharge and subject to arbitration under the Union's collective bargaining agreement.  Thus, the legality of the RIF was necessarily argued and decided.

      B.    <u>Plaintiff's arbitration theory fails because the preclusive effect asserted by the District is based on claims that were litigated in a civil suit, not arbitrated in an arbitration proceeding.</u>

Plaintiff appears to argue that the Union's case cannot serve as a basis for claim preclusion because the Union's case sought to enforce an arbitration clause. Plaintiff relies on *Alexander v. Gardner-Denver*, 415 U.S. 36 (1974), and its progeny for this proposition. However, Plaintiff fatally overlooks a key feature that distinguishes *Gardner-Denver Co*. and its progeny from this case. *Gardner-Denver* concerned the preclusive effects of an arbitration proceeding on a subsequent civil suit.

In this case, there is no previous arbitration proceeding. Rather, the Union brought suit in the Superior Court for the District of Columbia. Thus, unlike the plaintiff in *Gardner-Denver*, the Union was not attempting to enforce contractual rights through an arbitration proceeding. The Union was doing the same thing that Plaintiff is doing now—bringing a law suit in a court of general jurisdiction. *See* Def.'s Mot. for Summ. J. at Ex. # 3 p. 4 (the Union's Amended Complaint explicitly states that "this is a Court of general jurisdiction…").

Plaintiff disregards this distinction and instead advocates for an incredible extension of *Gardner-Denver*. Essentially, Plaintiff wants to assign the same non-preclusive effect accorded to an arbitration proceeding to a separate civil suit that concerns enforcement of arbitration rights. In *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20 (1991), the Supreme Court explained that these two situations are entirely different:

> the *Gardner-Denver* line of cases… did not involve the issue of the enforceability of an agreement to arbitrate statutory claims. Rather, they involved the quite different issue whether arbitration of contract-based claims precluded subsequent judicial resolution of statutory claims.

*Id*. at 35.  Thus, since *Gardner-Denver* has no bearing on civil suits to enforce an arbitration agreement, Plaintiff cannot rely on it to negate the preclusive effect that the Union's suit had on this case.

Moreover, not only does Plaintiff lack a legal basis for extending *Gardner-Denver*, but also Supreme Court precedent specifically warns against such broad extensions.  Recently in *14 Penn Plaza LLC v. Pyett*, 556 U.S. 247 (2009), the Court noted that "*Gardner-Denver* would appear to be a strong candidate for overruling" if it was broadly interpreted.  *Id*. at 264 n. 8.  Numerous other courts have also noted that the decision is problematic and should be interpreted narrowly.  *See Mathews v. Denver Newspaper Agency LLP*, 649 F.3d 1199, 1205 (10th Cir. 2011) ("the Supreme Court has disavowed *Gardner–Denver's* anti-arbitration language as misguided…"); *Taylor v. University of Phoenix/Apollo Group* 487 Fed. App'x. 942, 946-47 (5th Cir. 2012) ("in recent years, the Supreme Court has significantly limited the holding" of *Gardner–Denver*); *T.H. Eifert, Inc. v. United Ass'n. of Journeymen*, 422 F. Supp. 2d 818, 829 (W.D. Mich. 2006) ("After *Gilmer*, courts struggled with the apparent tension between *Gardner-Denver* and *Gilmer*").  Thus, this Court should also resist Plaintiff's invitation to author a novel expansion of a problematic case.

Finally, Plaintiff's argument fails to appreciate the basis for the *Gardner-Denver* decision.  It was the forum, not the subject matter, that led the Supreme Court to hold that arbitration proceedings should not always provide preclusive effect:

> Arbitral procedures, while well suited to the resolution of contractual disputes, make arbitration a comparatively inappropriate forum for the final resolution of rights created by [statute].  This conclusion rests first on the special role of the arbitrator, whose task is to effectuate the intent of the parties rather than the requirements of enacted legislation… the resolution of statutory or constitutional issues is a primary responsibility of courts…

*Gardner-Denver*, 415 U.S. at 56-57.  Thus, the Court refused to give arbitration preclusive effect because the arbitral forum inherently limits a plaintiff's ability to assert and present statutory claims.  But a civil suit obviously involves no such concerns.

The Union's case illustrates the distinction between arbitration and civil litigation.  By bringing a civil suit the Union enjoyed the broader advantages of a civil suit.  Indeed, in its Amended Complaint the Union brought a claim pursuant to D.C. Code § 38-172 ("PERAA"), a separate statutory claim with a legal basis distinct from the collective bargaining agreement that served as the basis for the Union's other claims.  *See* Def.'s Mot. for Summ. J. at Ex. # 3, Count III.  Throughout the case the Union continued to enjoy the broader advantages of a civil suit, as the Court permitted the Union to conduct discovery to determine whether the RIF was pretextual.  *See id*. at Ex. # 4 p. 4.  Even now, the Union still enjoys the benefits of filing a civil suit, as it has filed an appeal that is now pending in the District of Columbia Court of Appeals.  *See id*. at Ex. # 5.

These advantages of civil litigation render the entire rationale behind *Gardner-Denver* inapplicable to this case.  Plaintiff cannot claim he was denied the advantages of a civil suit, when in fact his Union filed a civil suit and ultimately did avail itself of those advantages.  And most importantly, Plaintiff cannot claim that his Union was denied the ability to pursue statutory claims when in fact his Union did pursue statutory claims.

*Gardner-Denver* is neither factually similar to this case, nor implicates the same concerns.  Accordingly, the Court should dismiss Plaintiff's entire case on *res judicata* grounds.

**II.    Plaintiff's § 1983 claim should be dismissed because Plaintiff had no property interest in retaining employment.**

Plaintiff cites *Chi. Teachers Union, Local No. 1, Am. Fed'n of Teachers v. Bd. of Educ. of City of Chi.*, 640 F.3d 221 (7th Cir. 2011), to support his claim that he had a "Constitutionally-

protected right to employment." Pl.'s Resp. 8. As a preliminary matter, the Seventh Circuit subsequently vacated the opinion.[2] However, even if the Seventh Circuit had not vacated the opinion, the Illinois Supreme Court ruled that statutes giving tenure to the teachers did not create any substantive or procedural due process rights. *Chi. Teachers Union, Local No. 1, Am. Fed'n of Teachers v. Bd. of Educ. of City of Chi.*, 963 N.E.2d 918, 924–27 (Ill. 2012).

But regardless, this case is still distinguishable from *Chi. Teachers Union* cases. Plaintiff does not even claim any statutorily created property interest, much less one that would rise to the level of substantive or procedural due process protection. The only potential property interest Plaintiff could claim would be based on the Union's collective bargaining agreement. But as noted in *WTU*, the collective bargaining agreement did not cover RIFs other than to require consultation with the Union before implementing one. *See* Def.'s Mot. for Summ. J. at Ex. # 4 p. 4-5. "To have a property interest in a benefit, a person must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576 (1972) (holding that non-tenured teacher had no due process rights in retaining employment).

---

[2] Upon rehearing, the Seventh Circuit vacated its previous decision and certified three questions to the Illinois Supreme Court, including whether a state statute that granted tenure to teachers after three years of employment created any substantive or procedural due process right to be rehired after a layoff. *Chi. Teachers Union, Local No. 1, Am. Fed'n of Teachers v. Bd. of Educ. of City of Chi.*, 662 F.3d 761, 764–65 (7th Cir. 2011). Subsequently, the Illinois Supreme Court held that the tenure system created no substantive or procedural due process rights. *Chi. Teachers Union, Local No. 1, Am. Fed'n of Teachers v. Bd. of Educ. of City of Chi.*, 963 N.E.2d 918, 924–27 (Ill. 2012). The Seventh Circuit then reversed the district court's ruling and remanded the case with instructions to vacate the preliminary and permanent injunctions it had issued. *Chi. Teachers Union, Local No. 1, Am. Fed'n of Teachers v. Bd. of Educ. of City of Chi.*, 476 F. App'x 83, 84–85 (7th Cir. 2012).

Plaintiff had no entitlement to a property interest in continued employment that would create a due process issue in the context of a RIF separation. Accordingly, for the reasons set forth in the District's Motion to Dismiss, the Court should dismiss Plaintiff's § 1983 claim.

### III.  The District has statutory authority to offer the option of voluntary retirement to individuals subject to a RIF.

Plaintiff claims that his choice to voluntarily retire was contrived because the letter he received from the District notifying him of the RIF "implied that he had to accept voluntary retirement to receive his annuity . . . ." Pl.'s Resp. at p. 9. In support of this contention, Plaintiff cites D.C. Code § 38-2021.03, which indicates that he would be entitled to an annuity even if he were involuntarily separated.

While it is certainly true that Plaintiff was entitled to an annuity regardless of whether he retired or was terminated, the simple fact that the District has chosen to inform individuals that are subject to a RIF of their option to voluntarily retire does not in any way represent a "deceptive maneuver." Pl.'s Resp. at p. 10. In fact, the same statute that Plaintiff cites specifically authorizes the District to offer such individuals the annuity regardless of how they are separated from their employment. *See* D.C. Code § 38-2021.03(f) (authorizing offer of voluntary retirement with retirement annuity in the event of major reductions in force). The fact that Plaintiff appears not have understood a statutory entitlement does not turn the District's offer into a deceptive practice. Accordingly, Plaintiff does not provide any facts supporting his allegation that his voluntary retirement amounted to constructive termination. The Court therefore dismiss the claim.

### CONCLUSION

WHEREFORE, the District requests that this Honorable Court enter an order dismissing

all Counts of Plaintiff's Complaint, or in the alternative, enter summary judgment in favor of the District on all counts in the Complaint.

Respectfully Submitted,    IRVIN B. NATHAN
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General, Civil Litigation Division

/s/ *Jonathan H. Pittman*
JONATHAN H. PITTMAN
Chief, Civil Litigation Division Section III
D.C. Bar No. 430388

/s/ *Joseph A. González*
JOSEPH A. GONZÁLEZ
Assistant Attorney General
D.C. Bar No. 995057
441-4th Street, N.W., Sixth Floor South
Washington, D.C.  20001-2714
202-724-5692 (direct)
Joseph.Gonzalez@dc.gov