THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| WILLIE BREWER | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 1:11-cv-01206 (KBJ) |
| DISTRICT OF COLUMBIA, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**DEFENDANT MICHELLE RHEE'S REPLY TO PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS MICHELLE RHEE FROM THE CASE[1]**

Defendant Michelle Rhee ("Ms. Rhee"), by and through undersigned counsel, hereby replies to Plaintiff's Opposition to Defendant's Motion to Dismiss with Respect to Michelle Rhee [ECF # 40], stating

**I.  The statute of limitations is not tolled because an official remains in office.**

Plaintiff's argues that the Court should not dismiss Ms. Rhee from the case because he filed his Amended Complaint within the statute of limitations. [ECF # 40 p. 2]. In support, he argues that the statutory period began on November 2, 2010 since "Ms. Rhee continued to perform at least ministerial duties as Chancellor until November 2, 2010." *Id*. However, this argument fails to appreciate that statute of limitations are not tolled simply because an official remains in office. Rather, a statutory period begins to accrue "when a plaintiff has knowledge of, or through the exercise of reasonable diligence should have knowledge of (1) the existence of

---

[1]  Plaintiff states that he "is not contesting the dismissal of Noah Wepman." Therefore, the Court should dismiss Mr. Wepman from the case. [ECF # 40 p. 1].

1

the injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *Sykes v. U.S. Attorney for the D.C.*, 770 F. Supp. 2d 152, 155 (D.D.C. 2011).

In this case, all of Plaintiff's claims accrued on or immediately around November 2, 2009. Plaintiff's recent Affidavit filing proves the point. [ECF # 47]. He concedes that he was an active board member of Washington Teachers' Union ("WTU") and was therefore involved in the RIF litigation strategy up until November 2009. *Id*. Moreover, even after he left his post with the WTU, he concedes that he was highly involved in the litigation, as he staged protests and wrote a letter (11/30/09) to the D.C. Bar regarding WTU's legal strategy. Plaintiff's involvement in these events shows his knowledge of "(1) the existence of [his] injury, (2) its cause in fact, and (3) some evidence of wrongdoing." *See Sykes*, 770 F. Supp. 2d at 155. Plaintiff simply cannot claim that he was unaware of the alleged RIF-related injuries when he was so deeply involved that he sought to shape the legal strategy for contesting the RIF.

Accordingly, Plaintiff's statute of limitations argument must fail. All of Plaintiff's claims accrued on or immediately around November 2, 2009 and yet Plaintiff sought to revive Ms. Rhee as a defendant on June 12, 2013— 7 months, and 10 days after the statute of limitations had run. [*See* ECF # 37, Defs.' Mot to Dismiss pp. 8-9]. The Court should therefore dismiss his claims against Ms. Rhee.

## II.     Plaintiff has not met the "good cause" standard under Rule 4(m).

Plaintiff admits that he served Ms. Rhee three days after the 120 day period elapsed. However, he argues that an "additional *nunc pro tunc* three day service extension is more than justified" because Ms. Rhee "had no stable employment or public home address." As an initial matter, this argument appears not to have a basis in the law. Timely service is not subject to three-day *nunc pro tunc* retroactive extensions that somehow cure an inherently deficient service.

But that is not the primary problem with Plaintiff's argument.  Plaintiff's argument fails because he does not state facts sufficient to meet the "good cause" standard for extension.

"Good cause exists when some outside factor ... rather than inadvertence or negligence, prevented service." *Anderson v. Gates*, 2013 WL 6355385 at *4 (D.D.C. December 6, 2013) (quoting *Mann v. Castiel*, 681 F.3d 368, 374 (D.C. Cir. 2012)).  Examples of such outside factors include "a defendant's intentional evasion of service" or a *pro se* plaintiff's reliance on a U.S. Marshal to effect service.  *Id*.  Thus, in order to meet the good cause standard, "a plaintiff must employ a reasonable amount of diligence in determining who to serve and how to effect service." *Prunte v. Universal Music Group*, 248 F.R.D. 335, 338-39 (D.D.C. 2008); *see Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1438 (10th Cir. 1994) ("the good cause provision of [Rule 4(m)] should be read narrowly to protect only those plaintiffs who have been meticulous in their efforts to comply with the Rule"); *Bachenski v. Malnati*, 11 F.3d 1371, 1376–77 (7th Cir. 1993) (a "plaintiff's attempts at service need be at the least ... accompanied by some showing of reasonable diligence" before good cause may be found).

In this case, Plaintiff fails to state facts sufficient to meet the good cause standard for extension.  Instead, he provides an odd narrative about Ms. Rhee's "secret marriage" to the Mayor of Sacramento and the alleged lack of publicity regarding her non-profit venture.  This does nothing to show that Plaintiff was "meticulous in [his] efforts to comply with the Rule." *See Despain*, 13 F.3d at 1438.  Moreover, these statements fail to establish that Plaintiff did anything other than perform internet searches.  Plaintiff never states that he sent a service packet or hired a service processor, let alone an investigator.  He simply "abandoned the idea… after a period of frustration."  In fact, although Plaintiff is decidedly vague about what if anything he did, it appears that the very first time he attempted service on Ms. Rhee, he was able to effect

service just by serving someone at her business.  And given California's relaxed service rules, Plaintiff could have done this all along.  *See Whitehead v. CBS/Viacom, Inc.*, 221 F.R.D. 1, 3 (D.D.C. 2004) ("[m]istake of counsel or ignorance of the rules of procedure usually does not suffice").

## Conclusion

Michelle Rhee first learned of this case 1,473 days after the events at issue (November 15, 2013).  There is no evidence that Plaintiff ever sought to serve her before that time.  Regardless of the fact that Judge Contreras has already dismissed her from the case, and even the fact that Plaintiff still failed to serve within 120 days after he filed the Supplemental Complaint, such a lengthy passage of time warrants dismissing her from the case.  Anything less would be unprecedented.

IRVIN B. NATHAN
Attorney General for the District of Columbia

GEORGE C. VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/ *Jonathan H. Pittman*
JONATHAN H. PITTMAN [430388]
Chief, Civil Litigation Division Section III

/s/ *Joseph A. González*
JOSEPH A. GONZÁLEZ
Assistant Attorney General
D.C. Bar No. 995057
441-4th Street, N.W., Sixth Floor South
Washington, D.C.  20001-2714
202-724-5692 (direct)
Joseph.Gonzalez@dc.gov