**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| WILLIE BREWER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 11-cv-1206 (KBJ) |
| | ) | |
| DISTRICT OF COLUMBIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MEMORANDUM OPINION

In the fall of 2009, District of Columbia Public Schools ("DCPS") Chancellor Michelle Rhee decided to fire 233 school teachers pursuant to a purported Reduction in Force ("RIF") that Rhee maintained was necessary due to budget constraints and poor performance.  This DCPS employment action was highly controversial, in no small part because DCPS had just hired 934 new teachers the previous spring and summer, and unlike many of the seasoned, older RIF-separated teachers, the new hires were mostly people in their twenties who were just beginning teaching careers through programs like Teach for America.  On October 9, 2009, the Washington Teacher's Union ("WTU") filed a lawsuit in the Superior Court of the District of Columbia against Rhee, DCPS, the District of Columbia, and D.C.'s Mayor on behalf of the RIF-separated teachers. WTU alleged that DCPS's assertion of a budget shortfall was a pretext for age discrimination; in the union's view, DCPS had claimed that it was undertaking a RIF in order to discharge older teachers without having to follow the discharge procedures in WTU's Collective Bargaining Agreement ("CBA") with DCPS.  The Superior Court

disagreed, granting summary judgment to DCPS on the grounds that the record clearly established that DCPS had implemented the terminations in response to budgetary constraints—*i.e.*, that the employment action was, in fact, a RIF and not a pretext for age discrimination.

Plaintiff Willie Brewer ("Plaintiff" or "Brewer") is a former DCPS music teacher and WTU member who retired after receiving notice that his position was being eliminated due to the 2009 RIF.  He now brings suit against the District of Columbia, current DCPS Chancellor Kaya Henderson in her official capacity, former DCPS Chancellor Michelle Rhee in her individual capacity, and former DCPS Chief Financial Officer Noah Wepman in his individual capacity (collectively, "Defendants").  The gravamen of Brewer's complaint is that DCPS's employment action in 2009 was not actually a valid RIF and, instead, was a pretext for age discrimination, and that even if it was a valid RIF, Defendants failed to implement the various procedural protections for RIF-separated teachers that D.C.'s municipal regulations require.  As a corollary to his principal claims, Brewer also argues that Defendants unlawfully breached Brewer's own employment contract, and that Defendants fraudulently misrepresented both the reasons why DCPS made the terminations generally and the reasons for Brewer's termination in particular.

Before this Court at present are two motions: a motion to dismiss the complaint or, in the alternative, for summary judgment, that the District of Columbia and Henderson have filed, and a motion to dismiss the complaint that has been submitted by individual defendants Wepman and Rhee.  Yesterday, this Court issued an Order announcing that both of these motions are **GRANTED** (*see* Order, ECF No. 54), and the

instant Memorandum Opinion explains the reasoning behind that ruling.  In short, this Court concludes that Brewer's complaint must be **DISMISSED** for two reasons: first, because the Superior Court's judgment in the WTU lawsuit precludes Brewer from relitigating whether or not the 2009 DCPS employment action was, in fact, a RIF; and second, because Brewer chose to retire when the RIF announcement was made—that is, Brewer's employment was not actually terminated pursuant to the 2009 RIF—and as a result, Brewer lacks standing to challenge Defendants' alleged failure to implement post-RIF procedural protections for the benefit of RIF-separated teachers.

## I.    BACKGROUND

### A.    The 2009 DCPS Employment Action And Brewer's Response[1]

Plaintiff Willie Brewer worked for DCPS for over 28 years.  (Compl. ¶ 4.)  Most recently, Brewer worked at Thurgood Marshall Elementary School as an "Instrumental Music K-12 Grade Level Professional."  (*Id.* ¶¶ 2, 6.)   In the spring and summer of 2009, DCPS hired 934 new teachers for the D.C. public school system—these new teachers were mostly recent college graduates at the beginning of teaching careers who DCPS hired through placements by programs like Teach for America.  (*See* Compl. ¶ 13; Suppl. Compl. ¶¶ 7-8, 10.)  According to the complaint, the hiring of these new

---

[1] Many of the facts related in this opinion have been culled from two separate complaints that Brewer has filed in this Court.  Brewer filed the initial complaint on June 29, 2011 (*see* Compl., ECF No. 1), and thereafter, he requested leave to amend his complaint (*see* Pl.'s Mot. for Leave to Supplement Compl., ECF No. 18), which this Court permitted (*see* Minute Order Granting Mot. for Leave to Supplement Compl. July 12, 2013).  However, instead of filing an amended complaint that contained all of the information in the original complaint along with the new information, Brewer filed a second "Supplemental" complaint that contains only the additional information.  (*See* Am. (Supplemental) Compl. ("Suppl. Compl."), ECF No. 20.)  As a result, Brewer's two complaints must be read together, and both are cited throughout this opinion.

teachers was unsustainable under DCPS's budget, and DCPS knew that at the time. (Suppl. Compl. ¶ 9.)

The events preceding Brewer's separation from DCPS are largely undisputed. On October 2, 2009, Brewer received a letter that stated that his position with DCPS would be eliminated pursuant to a Reduction in Force.  (*See* Compl. ¶ 4.)  The letter informed Brewer that employees subject to the RIF "may receive a severance payment" and that Brewer "may be eligible to retire in lieu of being separated from service[,]" which would mean Brewer would be eligible for a retirement annuity.  (*See* Ltr. From Michelle Rhee to Willie Brewer Jr. (Oct. 2, 2009) ("RIF Notice"), ECF No. 24-1 at 2.)[2] The letter directed Brewer to consult the DCPS webpage for further information, and to contact the DCPS Office of Human Resources with any questions.  (*Id.* at 3.)  Brewer ultimately opted to retire from his position as a music teacher.  (*See* Notification of Personnel Action, ECF No. 24-2 at 2; *see also* Suppl. Compl. ¶ 27 (contending that Brewer was "forced into involuntary retirement"); *but see* Compl. ¶ 4 ("Plaintiff was terminated by Defendants" as a teacher "due to a 'Reduction-in-Force'").)

### B.   The Union Litigation

Brewer was one of approximately 200 teachers who were notified that their positions were being eliminated pursuant to the 2009 RIF.  (*See* Compl. ¶ 10.) According to the complaint, a vast majority of the RIF-separated teachers were over forty years of age (*see id.*), and few if any of the younger teachers were fired as a result of the purported RIF (*see* Suppl. Compl. ¶ 13).  This Court takes judicial notice of the fact that, approximately one week after Rhee sent out the letter announcing the RIF in

---

[2]  Citations to documents that the parties have filed refer to the page numbers that the Court's electronic filing system assigns.

2009, the Washington Teachers' Union Local #6 ("WTU"), filed a lawsuit in Superior Court to challenge DCPS's conduct on behalf of their members, including Brewer and other veteran teachers.  *See Wash. Teachers' Union Local #6 v. Rhee*, Case No. 2009 CA 007482 B (D.C. Super Ct. filed Oct. 9, 2009) ("Union Litigation").  As explained *infra*, WTU generally contended that the terminations were not really a RIF but a mass discharge, and it sought to enjoin the terminations pending arbitration pursuant to the teachers' collective bargaining agreement, which required arbitration of discharges. (*See* Union Litig. Am. Compl., ECF No. 24-3, ¶¶ 22, 30, 41.)  In addition, WTU brought a statutory claim under the Public Education Reform Amendment Act, contending that the terminations violated DCPS's statutory duty to "endeavor to keep teachers in place after the start of the school year and transfer teachers, if necessary, during summer break."  (*Id.* ¶ 46 (quotation marks omitted).)

The specifics of WTU's substantive challenge to the RIF are pertinent to this Court's analysis of the claims Brewer makes in the instant action.  In its complaint, WTU specifically alleged that the purported RIF was an "attempt to disguise [a] mass discharge[.]"  (*Id.* at 3.)  The complaint stated that, despite DCPS's assertions to the contrary, there was no "budget shortfall" that necessitated a RIF, and that this explanation was merely a "pretextual attempt" to "discharge a substantial number of veteran teachers[.]"  (*Id.* at 3–4; *see also id.* at 3 ("DCPS' claim that a 'budget shortfall' made a [RIF] necessary is belied by the facts."); *id.* at ¶ 8 ("DCPS labeled the terminations . . . as a RIF due to an alleged 'budget shortfall,' but in actuality, it was a mass discharge[.]").)  Moreover, WTU alleged that, even if it turned out that there was a budget shortfall, DCPS had caused the budgetary problems on purpose, by hiring a

large number of new young teachers knowing that the budget could not accommodate those hires, so that DCPS could remove older teachers.   (*See id.* at 3; *id.* ¶ 15.)

The Superior Court denied WTU's request for a preliminary injunction.  (*See* Super. Ct. Order in Union Litig. ("Union Litig. Op."), ECF No. 24-4, at 2.)  Then, on September 7, 2012, after a limited discovery period, the Superior Court granted summary judgment to the District, finding that "the undisputed facts establish that the RIF was implemented in response to a shortfall that had been created in the DCPS budget[.]"  (*Id.* at 4; *see also id.* at 5 ("[B]ased on the undisputed material facts in the record, the RIF was undertaken in the fall of 2009 in response to a budget shortfall, and it was indeed a RIF.").)  Moreover, the Superior Court emphatically rejected the allegation in WTU's complaint that the RIF was "a pretext for terminating more senior teachers who otherwise could not have been discharged[,]" finding that "[t]he undisputed facts in the record in no way support that claim." (*Id.* at 5 n.3.)  WTU appealed the Superior Court's decision (*see* Notice of Appeal, ECF No. 24-5), and that appeal is currently pending before the District of Columbia Court of Appeals.

Notably, Brewer was on the WTU Executive Board and remained a member of WTU until the Union Litigation ended.  (*See* Aff. of Pl. Willie Brewer ("Brewer Aff."), ECF No. 47, ¶ 1.)  However, according to an affidavit that Brewer filed in the instant case, Brewer was dissatisfied with the way WTU handled the case in Superior Court. (*See id.* ¶¶ 1-2; *see also* Exs. 1–4 to Brewer Aff., ECF Nos. 47-1–47-4 (letters expressing disagreement with Union litigation strategy).)  Brewer claims that WTU "refused to consider evidence [Brewer] suggested" and that such evidence "would have weighed against whether [Rhee] reasonably believed that a budget shortfall existed at

the time of the mass discharge." (Brewer Aff. ¶ 1.)  Consequently, Brewer and other teachers allegedly "held several protest rallies outside of [the] WTU Office Building on the public sidewalk because WTU President George Parker and lawyers refused to hear from us." (*Id*. ¶ 2.)  Brewer also formed a non-profit—Fight for Fired DC Personnel— in order to "fight against the inadequacy" of the Union's representation. (*Id*. ¶ 2.) Brewer claims that, because of his vocal disagreement with WTU's litigation strategy, he was ultimately "banned from attending and participating in WTU Executive Board meetings[.]" (*Id*. ¶ 1.)  Nevertheless, Brewer retained his WTU membership, and apparently remained a member of that union until some point after he filed the instant lawsuit. (*See id*. ¶ 2 (noting that the members of Fight for Fired DC Personnel were also WTU members); *see also id*. ¶ 13–14 (noting that Brewer continued to participate in Fight for Fired DC Personnel activities through December of 2012).)

## C.  Procedural History

Brewer filed the instant action on June 29, 2011 (*see generally* Compl.); he filed his supplemental complaint on July 12, 2013 (*see generally* Suppl. Compl.).  Generally speaking, Brewer alleges that the sole justification for the challenged DCPS conduct was Rhee's desire to hire a younger teaching staff, which she allegedly did with "actual malice against older teachers" and with disregard for their rights. (Suppl. Compl. ¶ 20.) To support this contention, Brewer alleges that Rhee specifically admitted at an October 29, 2009, City Council meeting that there was no budget problem necessitating a RIF, and based largely on this contention, Brewer maintains that, thus, the DCPS's employment action was unjustified. (*Id.* ¶ 15.)  In addition, Brewer alleges that Rhee and DCPS violated D.C. law by not following the required RIF-related provisions for re-hiring RIF-separated teachers. (*See, e.g.*, *id*. ¶ 25.)

Brewer alleges five separate counts against Defendants.[3]  In Count One, Brewer alleges that Defendants' 2009 employment action had a disparate impact on teachers over 40 and thus violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 631-634, and also that Brewer and other similarly-situated teachers were denied the reemployment procedures that the RIF regulations require.  (Compl. ¶¶ 21-25.)  In Count Two, Brewer alleges that the same conduct also violated the D.C. Human Rights Act, D.C. Code § 2-1402.11.  (Suppl. Compl. ¶¶ 29.)  In Count Three, Brewer alleges that Defendants violated 42 U.S.C. § 1983 "by using RIF procedures [ ] as a pretext to deprive the RIF-separated teachers of their government employment under color of law."  (*Id.* ¶ 32.)[4]  Count Four alleges that Defendants generally committed fraudulent misrepresentation in violation of D.C. common law when they made statements concerning the RIF, or concealed the true information about the RIF, from the City Council, the older teachers generally, and the general public—each of whom allegedly detrimentally relied on the information.  (Suppl. Compl. ¶¶ 35–37.)[5]  As a result of that detrimental reliance, Brewer alleges that the older teachers "forfeited their property

---

[3] Brewer's complaint does not clearly state which counts he brings against which of the defendants; therefore, the Court will construe the complaint as asserting all five claims against each of the defendants.

[4] In this count, Brewer lists specific actions that the individual defendants allegedly took to violate "Plaintiff and the Older Teachers[']" civil rights.  (*See id.* ¶ 33.)  These alleged actions include "concealment of the RIF process from the City Council"; "intentionally abusing the RIF procedure by invoking it in the absence of budgetary necessity"; "knowingly using the RIF procedure . . . as a pretext for illegal age discrimination"; "artificially creating the budgetary reason for the 2009 RIF" by hiring so many younger teachers; concealing the extent of the hiring from DCPS; and defaming older teachers. (Suppl. Compl. ¶¶ 33(a)–(h).)

[5] Brewer does not identify any particular statements that he believes were false, but he attaches to his supplemental complaint slides from a presentation that Rhee made to the D.C. City Council on October 29, 2009.  (*See* Testimony of Michelle Rhee, Chancellor, Meeting of the Council of the District of Columbia, Attach. A to Suppl. Compl., ECF No. 20 at 20.)  Brewer believes that Rhee admitted at this meeting that a budget shortfall did not necessitate the RIF.  (*See* Suppl. Compl. ¶ 15.)

rights in continued employment[.]"  (*Id.* ¶ 37.)  Finally, in Count Five, Brewer alleges

that Defendants committed a breach of contract in violation of D.C. common law when

it notified him his position was being eliminated in October of 2009, because his

employment agreement allegedly guaranteed his employment through the 2010

academic year.  (Compl. ¶¶ 39–40.)  Significantly, the document that Brewer has

attached to his Supplemental Complaint that purportedly memorializes his employment

agreement is an amendment to WTU's Collective Bargaining Agreement with DCPS.

(*See* Mem. of Agreement, Attach. B to Suppl. Compl., ECF No. 20 at 34.)

  Defendants District of Columbia and Henderson (collectively, "the District")

have filed a motion to dismiss, or in the alternative, for summary judgment.  (*See* Defs.'

Mot. to Dismiss, or in the Alternative, for Summ. J. ("Defs.' Mot."), ECF 24.)[6]  The

District contends that the entire complaint should be dismissed as res judicata because

Brewer's union has already challenged the 2009 DCPS terminations in court and lost.

(*See id.* at 1.)  The District also offers four alternative arguments in support of

dismissal.  First, the District argues that the Court should dismiss Brewer's

discrimination claims (Counts One, Two, and Three) because Brewer retired before the

2009 RIF went into effect.  (*See id.* at 14.)  Next, the District contends that Brewer's

Section 1983 claim (Count Three) must be dismissed because the ADEA provides the

exclusive federal remedy for age discrimination claims.  (*See id.* at 15.)  Third, the

District argues that the Court should dismiss Brewer's fraudulent misrepresentation

---

[6] The Court is here referencing the District's *second* motion to dismiss—the parties engaged in a preliminary round of motion-to-dismiss briefing in this Court prior to Brewer's filing of the supplemental complaint. (*See* Defs.' Mot. to Dismiss, ECF No. 4.)  At that time, the District moved to dismiss Brewer's action on the grounds of res judicata, collateral estoppel, and the doctrine of parallel litigation, based on a then-pending D.C. Superior Court complaint that Brewer filed in November of 2010 challenging the same RIF. (*Id.*) This motion to dismiss was eventually denied after Brewer voluntarily dismissed his Superior Court case.  (*See* Order Denying Mot. to Dismiss, ECF No. 12.)

claim (Count Four) because Brewer's supplemental complaint failed to allege either a specific representation that DCPS made or any action that Brewer took in reliance on such a statement.  (*See id*. at 16.)  Fourth and finally, the District maintains that the Court should dismiss Brewer's claim for breach of contract (Count Five) because the District never guaranteed Brewer's employment, and even if the contract did guarantee employment, Brewer chose to retire.  (*See id.* at 17.)

Defendants Noah Wepman and Michelle Rhee ("the Individual Capacity Defendants") have also filed a motion seeking dismissal of Brewer's complaint.  (Defs. Noah Wepman & Michelle Rhee's Mot. to Dismiss from the Case ("Indiv. Defs.' Mot."), ECF 37.)  The Individual Capacity Defendants argue that the time allotted under the relevant statute of limitations for Brewer to name Wepman had expired before Brewer named Wepman as a defendant.  (*See id*. at 5–8.) The Individual Capacity Defendants argue that Rhee too must be dismissed from the case on statute of limitations grounds and, additionally, because Rhee has not been properly served.  (*See id*. at 8.)

This Court has now considered Defendants' motions, Brewer's responses, and Defendants' Replies.  (*See* Pl.'s Resp. to the Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J., ECF No. 27; D.C.'s Reply to Pl.'s Resp. to Defs.' Mot. to Dismiss, or in the Alternative, for Summ. J., ECF No. 29; Pl.'s Surreply, ECF No. 39; Dist.'s Reply to Pl.'s Surreply to the Mot. to Dismiss, or in the Alternative, for Summ. J., ECF No. 50; Pl.'s Opp. to Defs.' Mot to Dismiss with Respect to Rhee, ECF No. 40; Def. Michelle Rhee's Reply to Pl.;s Opp'n to the Mot. to Dismiss Michelle Rhee from the Case, ECF No. 49 at 1.)  The Court has also reviewed the various documents that

the parties attached to their briefs, including (1) a letter from Chancellor Rhee to Brewer, dated October 2, 2009, informing Brewer that his position at DCPS "is being eliminated as part of a reduction in force" and that he "may be eligible to retire in lieu of being separated from service" (RIF Notice at 1); (2) a document titled "Notification of Personnel Action," which indicates that Brewer elected to retire (Notification of Personnel Action, ECF No. 24-2); and (3) an affidavit from Brewer explaining his experience with respect to the Union Litigation (*see* Aff. of Pl. Willie Brewer ("Brewer Aff."), ECF No. 47; Exs. 1-4 to Brewer Aff., ECF Nos. 47-1–47-4.).  The Court has also held a hearing on this matter.  (*See* Minute Entry for Motion Hearing, May 14, 2014.)

## II.   ANALYSIS

Brewer's primary contention is that the DCPS's employment action in 2009 was not actually a valid RIF because it was not required for budgetary reasons and, instead, the termination of his position was a pretext for age discrimination.  (*See, e.g.*, Compl. ¶¶ 10, 24; Suppl. Comp. ¶¶ 7, 19.)  At the same time—and presumably in the alternative—Brewer argues that the 2009 RIF *does* qualify as a valid RIF, and that Defendants violated the law by failing to implement the post-RIF procedural protections for teachers that D.C. municipal regulations require.  (*See, e.g.*, Compl. ¶ 14; Suppl. Compl. ¶¶ 24, 33(e).)[7]  Brewer also claims that DCPS fraudulently misrepresented that

---

[7] Brewer makes these mutually exclusive claims not in separate counts of the complaint, but within the text of the *same* counts.  (*Compare, e.g.*, Suppl. Compl. ¶ 33(b) (asserting that the Defendants "conspired to deprive Plaintiff and the Older Teachers of their civil rights" by "intentionally abusing the RIF procedure by invoking it in the absence of budgetary necessity") *with id.* ¶ 33(e) (asserting that the Defendants "conspired to deprive Plaintiff and the Older Teachers of their civil rights" by "failing to provide a priority reinstatement mechanism for Older Teachers, as required under D.C. Code[]" (citing D.C. Code § 1-624.02(a)(3) ("Reduction-in-force procedures . . . shall include . . . priority reemployment consideration for employees separated."))).)  The Court will refer to Brewer's allegation that 2009 DCPS employment action was not actually a RIF at all because it was not required for budgetary reasons and therefore violated the ADEA, DCHRA, and Section 1983 as "part 1" of Counts One, Two, and Three, and it will refer to Brewer's allegation that the 2009 DCPS employment action

the contested employment action was a RIF and thereby induced teachers such as himself to "forfeit[] their property rights in continued employment as DCPS teachers without appropriate informed consent" (Suppl. Compl. ¶ 37), and that Defendants breached a contract that guaranteed Brewer's employment through 2010. (Compl. ¶¶ 38–41).

As explained fully below, this Court concludes that Brewer's entire complaint must be dismissed for two reasons. First, dismissal is required because the Superior Court considered and decided the issue of whether the DCPS terminations were a valid RIF or a pretext for discrimination in the WTU litigation—with respect to which Brewer was a party through his union—and thus Brewer is precluded from bringing this same challenge again, as he seeks to do in various counts of the complaint (namely, part 1 of Counts One, Two, and Three; Count Four; and Count Five). (*See supra* n.7.) Second, with respect to Brewer's contention that Defendants failed to implement the required post-RIF procedural protections for RIF-separated teachers (part 2 of Counts One, Two, and Three), Brewer lacks standing to bring this claim because Brewer was not terminated pursuant to the RIF and instead chose to retire.

### A.   Brewer Is Precluded From Relitigating Whether The 2009 DCPS Employment Action Was A Valid RIF Or A Pretext For Age Discrimination

As explained above, the Washington Teacher's Union Local #6 challenged the 2009 DCPS employment action in D.C. Superior Court on the grounds that it was a pretext for a mass discriminatory discharge of veteran teachers (*see* Union Litig. Am.

---

*was* a RIF and that the Defendants failed to implement post-RIF procedural protections for teachers that D.C. municipal regulations require and therefore violated the ADEA, DCHRA, and Section 1983 as "part 2" of Counts One, Two, and Three.

Compl. at 3–4), and it was only after the Superior Court had held that "the RIF was undertaken . . . in response to a budget shortfall, and it was indeed a RIF" (Union Litig. Op. at 5), that Plaintiff Brewer, who is a member of the WTU, filed the instant action. Thus, Brewer's complaint—which is likewise primarily based on the allegation that the terminations were a pretext for age discrimination—raises the specter of res judicata (*i.e.*, preclusion).

       1.    <u>Applicable Standards</u>

       a.   *Preclusion*

Generally speaking, res judicata is a well-settled doctrine pursuant to which courts "preclude parties from contesting matters that they have had a full and fair opportunity to litigate" and thereby "protect[] their adversaries from the expense and vexation attending multiple lawsuits, conserve[] judicial resources, and foster[] reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979). The term "res judicata" collectively refers to two different doctrines: claim preclusion and issue preclusion. *See Taylor v. Sturgell*, 553 U.S. 880, 892 (2008).

"Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit.'" *Taylor*, 553 U.S. at 892 (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001)). Thus, the doctrine of claim preclusion bars a successive action when a plaintiff files a new suit arising out the same facts as an earlier unsuccessful cause of action. *See, e.g.*, *Silva v. City of New Bedford*, 660 F.3d 76 (1st Cir. 2011) (holding that the doctrine of claim preclusion barred an arrestee's

lawsuit against a city alleging that she had been arrested negligently because the arrestee had brought an earlier suit against the police officers whom had arrested her and both cases involved the same incident); *Welk v. Fed. Nat. Mortgage Ass'n*, 561 F. App'x 577 (8th Cir. 2014) (holding that the doctrine of claim preclusion barred a mortgagor's suit against a subsequent purchaser to challenge the foreclosure of his home because the mortgagor had participated in an earlier class action challenging foreclosures by national banks and both cases involved the same foreclosure on mortgagor's home).

"Issue preclusion, in contrast, bars 'successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." *Taylor*, 553 U.S. at 892. (quoting *New Hampshire*, 532 at 748–749). Thus, the doctrine of issue preclusion "treats as final only those questions actually and necessarily decided in a prior suit." *Brown v. Felsen*, 442 U.S. 127, 139 n. 10 (1979); *see also, e.g.*, *Dummar v. Lummis*, 543 F.3d 614, 623–624 (10th Cir. 2008) (holding that the doctrine of issue preclusion barred a complaint alleging that defendant heirs to an intestate estate had been unjustly enriched because plaintiff's claim could only succeed if the court made the determination that the will was authentic and a probate court had already determined that the will was inauthentic); *Schuster v. Martin*, 861 F.2d 1369, 1372 (5th Cir. 1988) (barring a physician's action against public hospital trustees to recover for elimination of hospital privileges in violation of due process, where a state court had decided in an earlier action that the hospital's elimination of physician's hospital privileges did not violate due process).

14

It is also well settled that, when a federal court is presented with a controversy that has previously been resolved by a state-court judgment, "[the] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also* 28 U.S.C. § 1738 ("Judicial proceedings . . . shall have the same full faith and credit in every court within the United States."). This choice-of-law doctrine requires federal courts to determine the particular circumstances under which a litigant would be precluded from relitigating an issue that was previously decided as a matter of state law. As relevant here, courts in the District of Columbia "prohibit the re-litigation of issues determined in a prior action where (1) the issue was actually litigated; (2) was determined by a valid, final judgment on the merits; (3) after a full and fair opportunity for litigation by the party; (4) under circumstances where the determination was essential to the judgment." *DeWitt v. District of Columbia*, 43 A.3d 291, 300 (D.C. 2012) (internal quotation marks and citations omitted).

      b.    *Dismissal For Failure To State A Claim Upon Which Relief Can Be Granted Pursuant To Rule 12(b)(6)*

Defendants request dismissal of Brewer's complaint on res judicata grounds and other grounds pursuant to Federal Rule of Civil Procedure Rule 12(b)(6). (*See* Defs.' Mot. at 1–2; Indiv. Defs.' Mot. at 1.) In evaluating a Rule 12(b)(6) motion to dismiss, the court must accept as true all factual allegations in the complaint, and the plaintiff should receive the benefit of all inferences that can be derived from the facts alleged. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000). That being said, a plaintiff must plead enough facts

15

to make the claim seem plausible on its face. *Iqbal*, 556 U.S. at 678. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (citation omitted). The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2009) (internal quotation marks and citation omitted).

A court considering a motion to dismiss under Rule 12(b)(6) generally does not consider matters beyond the pleadings. *See Ward v. D.C. Dep't of Youth Rehab. Servs.*, 768 F. Supp. 2d 117, 119–20 (D.D.C. 2011); *see also Cottrell v. Vilsack*, 915 F. Supp. 2d 81, 88 (D.D.C. 2013) ("In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits or incorporated by reference, and matters about which the court may take judicial notice."). However, a court may take judicial notice of other court proceedings and the records from those proceedings when deciding a Rule 12(b)(6) motion. *See Luke v. United States*, No. 13cv5169, 2014 WL 211305, at *1 (D.C. Cir. Jan. 13, 2014) (citing *Dupree v. Jefferson*, 666 F.2d 606, 608 n.1 (D.C. Cir. 1981) and *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1088 (D.C. Cir. 2007)); *see also Chamber of Commerce v. Reich*, 897 F. Supp. 570, 574 n.4 (D.D.C. 1995), ("The Court is entitled to consider affidavits, depositions, exhibits, court judgments and orders, letters, transcripts of prior court proceedings, matters of public record and other materials outside the pleadings in consideration a motion under [Rule] 12(b)." (citing 5A Charles Wright & Arthur R. Miller, Federal Practice and Procedure, § 1364, at 475–81 and nn. 25–44 (2d ed. 1990 and 1994 supp.)), *rev'd on other grounds*, 74 F.3d 1322 (D.C. Cir. 1996). And this is

16

especially so when res judicata is the reason the complaint allegedly fails to state a claim upon which relief can be granted. *See, e.g., Consol. Edison Co. of New York v. Bodman*, 449 F.3d 1254, 1258–60 (D.C. Cir. 2006) (affirming dismissal of issue-precluded claims under 12(b)(6)); *Yamaha Corp. of Am. v. United States*, 961 F.2d 245, 254–58 (D.C. Cir. 1992) (same).

For the following reasons, and based largely on the record from the Union Litigation, this Court concludes that each of the prerequisites for issue preclusion under D.C. law are clearly present in the instant case, and that therefore Brewer's complaint must be dismissed for failure to state a claim upon which relief can be granted.

> 2.      The Nature Of The 2009 DCPS Employment Action Was Actually Litigated In The Union Litigation, And The Superior Court's Determination That It Was A RIF And Not A Mass Discriminatory Discharge Was Essential To That Court's Final Judgment

WTU's complaint in the Union Litigation contained three counts that accused DCPS of violating the terms of the CBA and the Public Education Reform Amendment Act, and specifically alleged that budget necessity did not precipitate the 2009 DCPS employment action such that it was not a RIF at all. (*See, e.g.*, Union Litig. Am. Compl. at 3–4 (asserting that the "DCPS' attempt to disguise this mass discharge [of teachers] as a 'RIF' caused by a 'budget shortfall' [was] clearly a pretext[]" because the true purpose of the RIF was "to discharge a substantial number of veteran teachers"); *id.* ¶¶ 14–16 (similar); *see also* D.C. Code § 1-608.01a(b)(2)(J)(iii) (defining a RIF as a "reduction in personnel" that "is necessary due to a lack of funding or the discontinuance of a department, program, or function of an agency"). The WTU raised this factual issue in the context of a claim for enforcement of the arbitration provision of a collective bargaining agreement (*see* Union Litig. Am. Compl. ¶¶ 29–39 (alleging

17

in Count One that DCPS had conducted a mass discharge instead of a RIF and therefore

the Union was entitled to arbitration under Article VII of the CBA)), but the WTU's

allegation that the terminations were a pretext for a mass discharge and not a RIF was

the factual basis for its legal contention that DCPS had wrongfully failed to arbitrate in

violation of the CBA (*see* Union Litig. Op. at 3 (noting that "the Union's principal

claim" was that DCPS had conducted "a mass discharge and therefore was subject to

procedures set forth in the [CBA], rather than to the regulations applicable to a RIF");

*see also id.* at 4 ("The Union has not claimed in this case that the CBA governs the RIF;

to the contrary, it has acknowledged that the only way the CBA would be applicable

would be if there was no RIF and if the Union members whose employment was

terminated by reason of the RIF instead were considered to have been discharged.")).[8]

Thus, the nature of DCPS's 2009 employment action—valid RIF or pretext for mass

discriminatory discharge?—was "'properly raised, by the pleadings or otherwise, and

[was] submitted for determination[.]'" *Ali Baba Co., Inc. v. WILCO, Inc.*, 482 A.2d

418, 422 (D.C. 1984) (quoting Restatement (Second) Of Judgments § 27(d) (1982)).

It is also clear that the Superior Court considered (and ultimately rejected)

WTU's pretext allegation, granting summary judgment to the District because "[t]he

undisputed facts in the record in no way support [the RIF as pretext] claim." (*See* Union

Litig. Op. at 5 n.3; *see also id.* at 5 ("[B]ased on the undisputed material facts in the

record, the RIF was undertaken in the fall of 2009 in response to a budget shortfall, and

it was indeed a RIF.").)  And the Superior Court's "no pretext" determination was

---

[8] That is, because the CBA required DCPS to arbitrate with respect to discharges, but did not require arbitration of a RIF (*see* Union Litig. Am. Compl. ¶ 16), the Union's CBA-violated claim hinged on a legal determination that the 2009 employment action was a mass discharge (as opposed to a RIF), which would have made the action procedurally improper (*see id.* ¶¶ 8, 16, 22).

essential to its ruling that the defendants were entitled to summary judgment on WTU's CBA claim, because it was on the basis of its conclusion that the DCPS had conducted a RIF, rather than a mass discharge, that the Superior Court held that "the CBA [and its arbitration provision] does not apply[.]"  (*Id.* at 5.)  *See also Proctor v. District Of Columbia*, No. 13-cv-985, 2014 WL 6676232 (D.D.C. Nov. 25, 2014) at *8 (explaining that "[i]n the [Union] Litigation, the plaintiffs argued that the RIF was a subterfuge for an improper mass discharge, which would be arbitrable under" the Collective Bargaining Agreement,  and therefore "it was necessary for the Superior Court to determine whether the RIF was a pretext—in which case the removal of the teachers was improper because it was not conducted pursuant to the Collective Bargaining Agreement" (internal quotation marks and citation omitted)).

Furthermore, as a court of competent jurisdiction, the Superior Court's determination that the 2009 employment action was a valid RIF undertaken for budgetary reasons and that, as a result, the District was entitled to judgment as a matter of law, was valid and final.  *See Dist. Intown Properties, Ltd. v. D.C. Dep't of Consumer & Regulatory Affairs*, 680 A.2d 1373, 1378 (D.C. 1996) (explaining that a valid, final judgment is rendered when a judicial body with jurisdiction over the matter exercises that power to decide the merits of the case); *see also Crabbe v. Nat'l Self Serv. Storage*, 955 F. Supp. 2d 1, 4 (D.D.C. 2013) (concluding that the D.C. Superior Court is a "court of competent jurisdiction" that can resolve most claims and can enter summary judgment).  Thus, the record with respect to the Union litigation plainly establishes that the issue under consideration in the instant case has already been raised

and decided in a manner that supports the conclusion that nearly all of the essential elements for preclusion under District of Columbia law have been satisfied.[9]

Brewer appears to concede in his briefs that the question of whether or not the 2009 DCPS employment action was pretext for a mass discriminatory discharge was actually raised and litigated in the D.C. Superior Court. (*See* Pl.'s Resp. at 1–2 (acknowledging that both the complaint in the instant case and that presented to the Superior Court by WTU assert "that the mass discharge [RIF] at issue was designed to promote the Chancellor's agenda of hiring younger teachers").  Nevertheless, Brewer argues that the doctrine of issue preclusion does not bar his current lawsuit because "the legal theories presented, and thus the standards for determining the unlawfulness of the mass discharge, are dramatically different in the two cases." (*See id*. at 2.)  Focusing on the stated causes of action, Brewer highlights the fact that, unlike the WTU complaint, "[t]he instant complaint contains [1] age discrimination counts under both Federal and local employment discrimination statutes"; [2] "a deprivation of civil rights count and a fraud count stemming from the Chancellor's alleged improprieties and concealment as part of the RIF process; and [3] "a breach of contract count which is based on a signed written agreement between Plaintiff Willie Brewer and the District of Columbia government[.]"  (*Id*. at 4.)  By carrying on in this fashion, Brewer apparently

---

[9] Although WTU has appealed the Superior Court's decision and that appeal is currently pending before the D.C. Court of Appeals (*see* Notice of Appeal, ECF No. 24-5), the "pendency of an appeal does not suspend the operation of a final judgment for purposes of [issue preclusion][,]" *Nixon v. Richey*, 513 F.2d 430, 438 n.75 (D.C. Cir. 1975).  Consequently, the mere fact of WTU's appeal does not foreclose this Court's determination that the Superior Court's order granting summary judgment to the District is a valid, final judgment on the merits.  *See Richey*, 513 F.2d at 438 n.75; *cf. Murray v. Goodwin*, 852 A.2d 957, 960 (D.C. 2004) (noting that, "'if a decision that might be considered final for issue preclusion purposes is subsequently appealed, it is possible that an appellate *decision* will vitiate the finality required for issue preclusive effect'" (quoting 18 Moore's Federal Practice § 132.03[5][b][I] at 132-130 (3d ed. 1997) (emphasis added))).

believes that it matters that there is a difference between the particular claims asserted

in the WTU litigation and those he seeks to present here, but it is clear beyond cavil

that "[f]or preclusion purposes, an 'issue' is not limited to a 'cause of action.'"

*Jackson v. District of Columbia*, 412 A.2d 948, 953 (D.C. 1980)).  This means that the

fact that Brewer and WTU did not point to exactly the same legal claims and theories of

recovery when asking the courts to determine the nature of the 2009 DCPS employment

action is of no import—what matters to proper preclusion analysis under these

circumstances is whether the parties in the subsequent case have posed a significant

issue of fact that was already asked, considered, and answered by a court of competent

jurisdiction in a previous lawsuit.  *See* Restatement (Second) of Judgments § 27 cmt. c

(providing criteria for evaluating whether or not an issue in a successive proceeding is

identical to an issue previously litigated); *see also, e.g., Proctor*, 2014 WL 6676232 at

*7 (finding that a former DCPS teacher's lawsuit raising the question of whether the

2009 terminations were a pretext for age discrimination was precluded in light of the

Union Litigation, calling the plaintiff's new claims and facts an "attempt[] to pour new

wine into old wine skins").

In short, this Court concludes that the Union Litigation and Brewer's complaint

both rest on the same disputed factual issue—whether the 2009 terminations were a RIF

because they were predicated on budget necessity or a mass discriminatory discharge of

veteran teachers (*compare* Union Litig. Op. at 3–4 *with* Compl. ¶¶ 23–24)—and that the

Superior Court reached and resolved that issue (*see* Union Litig. Op. at 5 & n.3

(concluding that the RIF "was indeed a RIF" and that "the undisputed facts in the

record in no way support" the Union's theory "that DCPS had created the shortfall by

hiring too many new teachers in the spring and early summer of 2009 . . . as a pretext for terminating more senior teachers"). Accordingly, the first, second, and fourth elements for preclusion under D.C. law are satisfied, to wit: the nature of the 2009 DCPS employment action was actually previously litigated, and the determination by a court of competent jurisdiction that the terminations were not pretextual was essential to the valid, final judgment that that court rendered on the merits of the prior case.

3.   Brewer Had A Full And Fair Opportunity To Litigate In The Context Of The Union Litigation

Even when a D.C. court has previously rendered a final judgment with respect to an essential issue, it must also be established that the prior litigation involved the same parties as in the new case, and that those parties previously had a "full and fair opportunity" to litigate the issue in order for that prior determination to have preclusive effect under District of Columbia law. *DeWitt*, 43 A.3d at 300. Generally speaking, despite distinctions in the procedures afforded to litigants in different jurisdictions, the "full and fair opportunity" requirement comports with what must be made available to litigants under the Fourteenth Amendment's Due Process Clause, *see Kremer v. Chem. Constr. Corpor.*, 456 U.S. 461, 481 (1982), which means that a party is considered to have had a full and fair opportunity to litigate an issue if, in the context of the prior case, the party or their privy was given an opportunity to present witnesses, introduce exhibits, challenge contrary evidence, make statements, and receive a determination of the facts and the law, *see Davis v. Davis*, 663 A.2d 499, 502 (D.C. 1995). And a plaintiff is deemed to have been a party to prior litigation for preclusion purposes when he is "so identified in interest with a party to the former litigation that he or she represents precisely the same legal right in respect to the subject matter of the case."

22

*EDCare Mgmt., Inc. v. DeLisi*, 50 A.3d 448, 451 (D.C. 2012) (internal quotation marks and citation omitted).

Significantly for present purposes, among the traditional categories of privies are "those whose interests are represented by a party to an action[,]" *Carr v. Rose*, 701 A.2d 1065, 1075 (D.C. 1997) (internal quotation marks and citation omitted), and those who have a "pre-existing substantive legal relationship" with the "party to the judgment." *EDCare Mgmt.*, 50 A.3d at 451 (internal quotation citation omitted). Accordingly, "[c]ourts have recognized that unions are in privity with their membership for the purposes of res judicata." *Adams v. Pension Ben. Guar. Corp.*, 332 F. Supp. 2d 231, 238 n.8 (D.D.C. 2004); *see also Hitchens v. County of Montgomery*, 98 F. Appx. 106, 114 (3d Cir. 2004) (noting that "a decision against a union can bind union members in a subsequent action" (internal quotation marks and citation omitted)); *Monahan v. Dep't. of Corr.*, 214 F.3d 275, 285–86 (2d Cir. 2000) (recognizing that union members' "interests [are] adequately represented" by the union (internal quotation marks ommitted)); *Meza v. General Battery Corp.*, 908 F.2d 1262, 1268 (5th Cir. 1990) ("Federal courts have long recognized that individual members of labor unions . . . can be bound by judgments in suits brought by the union[.]"); *Am. Postal Workers Union v. U.S. Postal Serv.*, 736 F.2d 317, 318 (6th Cir. 1984) ("It has long been held that a decision against a union can be binding on union members in a subsequent action[.]").

Here, as repeatedly explained above, WTU filed suit in Superior Court on behalf of its members and, among other things, raised and litigated the factual issue of whether or not the 2009 DCPS employment action was a pretext for a mass discriminatory

discharge.  WTU and the Rhee engaged in discovery on the question of what precipitated the budget shortfall and the RIF, and these parties presented witnesses and argued both orally and in writing about the nature of DCPS's conduct.  (*See* Union Litig. Op. at 2, 4–5.)  It is clear that WTU, on behalf of its members, had the chance to present witnesses, introduce exhibits, challenge contrary evidence, make statements, and receive a determination of the facts and the law, and indeed, there appears to be no dispute that WTU itself had a full and fair opportunity to present the pretext issue when it appeared before the Superior Court.  *Cf., e.g.*, *Davis*, 663 A.2d at 502 (holding that a plaintiff had a full and fair opportunity to litigate in a previous action where the Judge had held "successive hearings" and the plaintiff "had the opportunity to present witnesses and challenge contrary evidence").

However, Brewer eschews the conclusion that he should be considered to be a party to the Union Litigation for the purpose of issue preclusion, maintaining that, even though he was a WTU member, and at some point, even *a board member* (*see* Brewer Aff. ¶ 1), he himself was not afforded a full and fair opportunity to litigate previously because WTU "actively refused input from [Brewer] in his attempts to provide supporting evidence regarding a manufactured shortfall and RIF implementation violations" (Pl's Surreply at 6).  To Brewer's credit, the record does indicate that Brewer vigorously and contemporaneously disagreed with the Union's litigation strategy in the prior case.  (*See* Brewer Aff.¶¶ 1–2; *see also* Brewer Aff. Exs. 1–4, ECF Nos. 47-1–47-4 (letters expressing disagreement with Union litigation strategy).)  But this Court does not accept Brewer's suggestion that, based on this active disagreement, he was not fully and fairly represented in the prior case such that it would be unfair to

give the Superior Court's judgment in the Union Litigation a preclusive effect.  (*See,
e.g.*, Pl.'s Surreply at 5 ("[T]he Union Litigation was not designed to address Plaintiff's
claims[.]"); *id.* at 6 ("The Union could not ethically represent Plaintiff, as his interest
conflicted with a different subset of Union members—the probationary employees
recently hired who replaced the RIFed employees.").)  Other courts have considered
this same argument, and have rejected it, because privity merely requires an alignment
of interests, and both the WTU and Brewer had the same ultimate goal: to challenge the
2009 DCPS employment action as pretextual and invalid.  *See e.g.*, *Handley v. Phillips*,
715 F. Supp. 657, 667 (M.D. Pa. 1989) ("Although Plaintiff Handley may not be
satisfied with the representation she received from her union, that does not create the
right to relitigate those issues examined in arbitration."); *Sullivan v. American Airlines*,
*Inc.*, 613 F. Supp. 226, 231 (S.D.N.Y. 1985) (holding that a plaintiff was not denied a
full and fair opportunity to litigate his claims even though the plaintiff asked his union
to appeal a decision and the union refused).  There is no legal basis for concluding that
a union member's mere disagreement with the organization's litigation strategy releases
the bonds that would otherwise require holding members to the outcome of cases
brought and litigated by their representatives.

    With respect to Brewer's argument that WTU did not fully and fairly represent
him and other older teachers because the union also represented the 934 newly
employed teachers, "the very nature of collective bargaining requires an agent to
balance interests that quite often are contradictory[.]" *Caudle v. Pan Am. World
Airways, Inc.*, 676 F. Supp. 314, 317 (D.D.C. 1987).  Additionally, in this case, WTU
clearly sided with the older teachers when it argued that the RIF was a pretext for age

discrimination—*i.e.*, it vigorously pressed the argument that the DCPS employment action was an improper and unnecessary attempt to usher in new, young teachers at the expense of those with tenure and seniority—and there is no unfairness in concluding that Brewer cannot relitigate the Superior Court's findings in this regard. *See, e.g., Beverly Health & Rehab. Servs., Inc. v. NLRB*, 317 F.3d 316, 323 (D.C. Cir. 2003) (noting that "[the plaintiff] had every incentive to—and did—litigate the issue before the [prior court] so that there is no unfairness in holding [the plaintiff] to the result reached there").

The bottom line is this:  WTU represented its members in Superior Court when it undertook to challenge the 2009 DCPS employment action, and despite his personal disagreement with the Union's litigation tactics, Brewer not only participated in the prior litigation, he remained a member of the Union until that litigation reached its end. Accordingly, this Court finds that, in the context of that prior case, WTU (and thus Brewer) had a full and fair opportunity to litigate the critical pretext question, and the Superior Court conclusively determined that the 2009 RIF was not a pretext for age discrimination, rendering a valid, final judgment on the merits of that issue.

    4.    <u>Issue Preclusion Forecloses Most Of The Claims Brewer Has Brought In This Complaint</u>

This Court's preclusion conclusion necessarily means that any claims Brewer makes in the instant litigation that require proof that the RIF was a pretext for age discrimination are precluded and thus fail to state a claim upon which relief can be granted. *See Yamaha Corp. of Am.*, 961 F.2d at 260.  There are five such claims in the instant case.  For example, Brewer alleges in his complaint that, because the 2009 terminations were a pretext for age discrimination, Defendants violated the ADEA (part

26

1 of Count One), the D.C. Human Rights Act (part 1 of Count Two), and Section 1983 (part 1 of Count Three).  As Brewer has framed them, these claims necessarily require a finding that DCPS's conduct was not actually a RIF predicated on budget necessity but a discriminatory discharge of older teachers.  *See Barnett v. PA Consulting Grp., Inc.*, 715 F.3d 354, 358 (D.C. Cir. 2013) (noting, with respect to discrimination claims brought under the ADEA, that courts require "evidence from which a reasonable jury could find that the employer's stated reason for the firing is pretext"); *Vatel v. Alliance of Auto. Mfrs.*, 627 F.3d 1245, 1246 (D.C. Cir. 2011) (noting the same is true with respect to discrimination claims brought under the D.C. Human Rights Act); *Jenkins v. Nee*, 640 F. Supp. 2d 47, 49–50 (D.D.C. 2009) (noting the same is true with respect to discrimination cases under Section 1983).

Similarly, the allegedly fraudulent statements that Brewer describes in Count Four are Defendants' statements that the terminations were precipitated by budget necessity (*see* Suppl. Compl. ¶¶ 33, 35), and in order to demonstrate by clear and convincing evidence that these statements were false for the purpose of D.C. common law, Brewer would have to show that the 2009 employment action did not, in fact, result from budgetary constraints and, instead, was a pretext for mass age discrimination.  *See In re Estate of McKenney*, 953 A.2d 336, 342 (D.C. 2008) (explaining that, among other things, a plaintiff seeking to establish fraudulent misrepresentation must establish "a false representation").

Brewer's breach of contract claim in Count Five, too, necessarily implicates the Superior Court's prior 'no pretext' determination.  This is because, as noted above, Brewer has attached a portion of the CBA to his supplemental complaint, and has

thereby suggested that the CBA is the contract that "guaranteed his employment at the ET 15-12 level through the 2010 academic year" and that was breached by DCPS's actions in 2009.  (Suppl. Compl. ¶ 40.)  But the Superior Court clearly and unequivocally determined that any termination-related guarantees in the CBA applied only to DCPS employees who were *discharged* and not those who were subjected to a valid, non-pretextual RIF, such as the one the Superior Court determined DCPS implemented in 2009.  (*See* Union Litig. Op. at 5 (concluding that "the CBA does not apply to the RIF"); *see also id.* ("The Court further finds as a matter of law that the CBA provides no legal basis for a challenge to the RIF or the way the RIF was implemented.").)  Accordingly, even if the CBA could somehow be interpreted to have "guaranteed" Brewer's employment, he is precluded from relying on the CBA's provisions to challenge the DCPS employment action at issue in this case.

Thus, the Superior Court's decision that the challenged DCPS conduct was not pretextual is preclusive of part 1 of Counts One, Two, and Three, as well as the entirety of Counts Four and Five of Brewer's complaint, and accordingly, these counts must be dismissed.  *See, e.g.*, *Proctor*, 2014 WL 6676232, at *9, 16 (dismissing, as res judicata, a former DCPS teacher's challenge to the 2009 RIF as a pretext for discrimination).  (*See also* Superior Ct. Order Dismissing *Becks v. District of Columbia* (No. 2010 CA 8356), Ex. 1 to Def.'s Sur-Sureply, ECF No. 50-1, at 17 (dismissing, as res judicata, former DCPS teachers' challenge to the 2009 RIF as a pretext for discrimination).)[10]

---

[10] This Court's conclusion renders it unnecessary for the Court to opine regarding the District's argument that the last two counts of the complaint—fraudulent misrepresentation and breach of contract—should be dismissed because Brewer has failed to plead fraud with particularity and the contract to which Brewer refers does not guarantee employment to Brewer.  (*See* Defs.' Mot. at 16–18.) Brewer appears to concede in his opposition that Defendant is correct, and rather than presenting any argument for why the complaint, as written, states a claim, Brewer requests leave to amend the

**B.    Brewer Lacks Standing To Challenge Defendants' Alleged Failure To Implement The Procedural Protections That D.C. Municipal Regulations Provide For RIF-Separated Employees**

What remains of Brewer's complaint is part 2 of Counts One, Two, and Three; in these parts, Brewer appears to allege that Defendants violated the ADEA, the DCHRA, and Section 1983 by failing to implement certain procedural protections that employees separated via a RIF are entitled to under D.C. law.  (*See* Compl. ¶ 23; Suppl. Compl. ¶¶ 23–25, 29, 33(e).)  Brewer presumably seeks to advance these claims *as an alternative* to his primary contention that the 2009 RIF was not really a RIF at all (and was, instead, a pretext for age discrimination) because a challenge to the District's alleged failure to implement post-RIF procedural protections necessarily assumes that the 2009 RIF *was* a RIF and, therefore, that certain procedural protections were required.  To the extent that part 2 of Counts One, Two, and Three allege that the District failed to provide required post-RIF procedural protections, there is no reliance on the pretext allegation, and the doctrine of issue preclusion does not bar these parts of Brewer's complaint.  Moreover, given that the District has requested summary judgment and has attached to its motion several documents that purportedly show that there is no genuine issue of material fact with respect to Brewer's post-RIF procedural protection allegations, these parts of Brewer's complaint implicate Rule 56 of the

---

supplemental complaint to cure this defect.  (*See* Pl.'s Resp. at 10 (noting that "Brewer intends to assert" additional facts to support his fraud claim and that Brewer "requests leave to amend his complaint to clarify this factual predicate, to the extent that it has not yet been sufficiently pled"); *see also id*. at 10–11 ("Plaintiff recognizes that his breach of contract count is based on a memorandum that serves to amend the collective bargaining agreement, and that this memorandum is not signed by the Plaintiff.  Plaintiff thus seeks to amend the complaint to assert this count under § 301 of the Labor Management Relations Act.").)  The Court is hereby denying Brewer's request for leave to amend these counts because, amended or no, these claims are still precluded, and thus amendment would be futile. *See Hettinga v. United States*, 677 F.3d 471, 480 (D.C. Cir. 2012) ("A district court may deny a motion to amend a complaint as futile if the proposed claim would not survive a motion to dismiss.").

Federal Rules of Civil Procedure.  For the reasons explained below, this Court

concludes that Brewer does not have Article III standing to press these procedural

claims in federal court, and that, therefore, these claims must be dismissed as a matter

of law.

        1.    <u>Applicable Standards</u>

           a.   *Standing*

Article III's limitation of the judicial power to "Cases" and "Controversies"

means that a federal court only has subject matter jurisdiction over a plaintiff's case if

the plaintiff has suffered or will suffer an injury that is traceable to the actions of the

opposing party and redressable by the relief requested from the court.  *See Lujan v.*

*Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  These requirements—collectively

called "standing"—"are not mere pleading requirements but rather an indispensable part

of the plaintiff's case," *id*. at 561, in that they "serve[] to identify those disputes which

are appropriately resolved through the judicial process[,]"  *Whitmore v. Arkansas*, 495

U.S. 149, 155 (1990).  "In this sense, the standing requirement acts as a gatekeeper,

opening the courthouse doors to narrow disputes that can be resolved merely by

reference to facts and laws, but barring entry to the broad disquiets that can be resolved

only by an appeal to politics and policy."  *Food & Water Watch, Inc. v. Vilsack*, No.

14cv1547, 2015 WL 514389, at *6 (D.D.C. Feb. 9, 2015); *see also Coal. for Mercury-*

*Free Drugs v. Sebelius*, 671 F.3d 1275, 1279 (D.C. Cir. 2012) ("The requirement of

Article III standing thus helps preserve the Constitution's separation of powers and

demarcates 'the proper—and properly limited—role of the courts in a democratic

society.' " (quoting *Warth v. Seldin,* 422 U.S. 490, 498 (1975))).

Where a plaintiff asserts that he has suffered a procedural injury, "the courts relax—while not wholly eliminating—the issues of imminence and redressability[.]" *Ctr. for Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1157 (D.C. Cir. 2005); *see also Lujan*, 504 U.S. at 572 n. 7. That is, the plaintiff need not show that the alleged harms resulting from the procedural violation will soon occur. Nor need they show that the defendant's observation of proper procedure will necessarily result in plaintiff's desired outcome. *See NB ex rel. Peacock v. District of Columbia*, 682 F.3d 77, 86 (D.C. Cir. 2012) ("[A] 'plaintiff who alleges a deprivation of a procedural protection to which he is entitled never has to prove that if he had received the procedure the substantive result would have been altered.'" (quoting *Sugar Cane Growers Coop. of Fla. v. Veneman*, 289 F.3d 89, 94 (D.C. Cir. 2002))).

"[H]owever, the injury in fact and causation requirements of standing are *not* similarly relaxed in the procedural injury context." *WildEarth Guardians v. Bureau of Land Mgmt.*, No. 11cv1481, 2014 WL 1285505, at *5 (D.D.C. Mar. 31, 2014) (emphasis in original) (citing *Ctr. for Law & Educ.*, 396 F.3d at 1157; *Summers v. Earth Island Inst.*, 555 U.S. 488, 497 (2009)). Indeed, it is clear that "deprivation of a procedural right without some concrete interest that is affected by the deprivation—a procedural right *in vacuo*—is insufficient to create Article III standing." *Summers*, 555 U.S. at 496. Thus, where a plaintiff alleges a procedural injury, the plaintiff must show a personal connection to the action that he challenges. *See Lujan*, 504 U.S. at 560 n. 1 (noting that the requirement that an injury-in-fact be "particularlized" means, at minimum, "that the injury must affect the plaintiff in a personal and individual way").

31

It is also the case that "[t]he party invoking federal jurisdiction bears the burden of establishing [the standing] elements." *Id.* at 561; *see also Halcomb v. Office of the Senate Sergeant-at-Arms of the U.S. Senate*, 209 F. Supp. 2d 175, 176 (D.D.C. 2002). Accordingly, it is "'presumed that a cause lies outside [the federal courts'] limited jurisdiction,'" *Muhammed v. FDIC*, 751 F. Supp. 2d 114, 118 (D.D.C. 2010) (first alteration in original) (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)), and "each element [of standing] must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation[,]" *Lujan*, 504 U.S. at 561; *see also Elec. Privacy Info. Ctr. v. U.S. Dep't of Educ.*, 48 F. Supp. 3d 1, 9 (D.D.C. 2014) ("The extent of the plaintiff's burden [to demonstrate that he has standing] varies according to the procedural stage of the case."). "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Lujan*, 504 at 561 (internal quotation marks and citation omitted); *see also NB ex rel. Peacock*, 682 F.3d at 82 ("[A]t the pleadings stage, the burden imposed on plaintiffs to establish standing is not onerous." (internal quotation marks, citation, and alteration omitted)). "That burden increases, however, as the case proceeds." *Equal Rights Ctr. v. Post Props., Inc.*, 633 F.3d 1136, 1141 n.3 (D.C. Cir. 2011). "In response to a summary judgment motion . . . the plaintiff can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts, which for purposes of the summary judgment motion will be taken to be true." *Lujan*, 504 U.S. at 561 (internal quotation marks and citations

omitted).  In other words, "[a]t summary judgment, [plaintiff's] burden is to show that a reasonable juror could find he has standing." *Dominguez v. UAL Corp.*, 666 F.3d 1359, 1362 (D.C. Cir. 2012).

b.    *Summary Judgment Under Rule 56*

In this case, the District has moved in the alternative for dismissal under Federal Rule of Civil Procedure 12(b)(6) or for summary judgment pursuant to Rule 56.  (*See* Defs.' Mot. at 3, 18 (requesting that the Court consider its motion to be one for the entry of summary judgment in its favor).)  As mentioned, the District has attached documents to its motion that are relevant to its contention that Brewer lacks standing to challenge DCPS's alleged failure to implement required post-RIF procedural protections, and accordingly, this Court will honor the District's request that its motion be treated as one for summary judgment and will apply the summary judgment standard with respect to this issue.  Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and [thus] the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *accord Talavera v. Shah*, 638 F.3d 303, 308 (D.C. Cir. 2011).  "A fact is material if it 'might affect the outcome of the suit under the governing law,' and a dispute about a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  *Steele v. Schafer*, 535 F.3d 689, 692 (D.C. Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When Rule 56 is invoked, the moving party has the initial burden of demonstrating the absence of a genuine dispute as to any material fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  Once the moving party has met this burden,

to defeat the motion, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks and citation omitted).  While the Court must view this evidence in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor, *see, e.g.*, *Grosdidier v. Broad. Bd. of Governors, Chairman*, 709 F.3d 19, 23–24 (D.C. Cir. 2013), the non-moving party must show more than "[t]he mere existence of a scintilla of evidence in support of" his or her position—"there must be evidence on which the jury could reasonably find for [the non-moving party]." *Anderson*, 477 U.S. at 252. Moreover, the non-moving party "may not rest upon mere allegation or denials of his pleading but must present affirmative evidence showing a genuine issue for trial." *Laningham v. U.S. Navy*, 813 F.2d 1236, 1241 (D.C. Cir. 1987) (internal quotation marks and citation omitted).  Notably, "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge at summary judgment." *Barnett*, 715 F.3d at 358 (internal quotation marks and citation omitted).  Rather, the Court's role in deciding a summary judgment motion is not to "determine the truth of the matter, but instead decide only whether there is a genuine issue for trial." *Id.* (internal quotation marks and citation omitted).

2.      <u>There Is No Genuine Issue Of Material Fact Regarding Whether Brewer's Employment Was Terminated Pursuant To The 2009 RIF (It Was Not), And Therefore He Does Not Have Standing To Challenge The Alleged Violation Of RIF Procedures</u>

Brewer seeks to challenge the District's alleged failure to provide procedural protections to RIF-separated teachers.  It is true, as Brewer suggests, that the District of Columbia Code and its accompanying regulations lay out the specific circumstances under which DCPS may remove teachers through a RIF, as well as the associated

procedures that DCPS must follow when it does so, and accordingly, if DCPS staff must be eliminated pursuant to a RIF, DCPS must consider certain factors in determining which employees to remove.  *See* 5 D.C. Mun. Regs. tit. 5, § 1503.2 (listing consideration such as the "relevant contributions, accomplishments, or performance" of the employee; his or her "[r]elevant supplemental professional experiences"; the needs of the school; and the individuals' "[l]ength" of service with DCPS).  Moreover, because separation via RIF is not "a punitive or corrective action[,]" D.C. Code § 1-608.01a(b)(2)(J)(iii), the regulations contain certain protections for employees separated due to a RIF, including required placement on a "reemployment priority list" to secure eligibility for a return to work before any new hires, D.C. Mun. Regs. tit. 6, § 2427.  However, even if Brewer's allegation that DCPS failed to implement these and other regulatory requirements when it conducted the 2009 RIF is correct as a matter of fact, this Court finds that Brewer's claim fails as a matter of law for lack of standing because Brewer is a *retiree* and not a RIF-separated teacher.

Two of the documents that Defendants append to their motion for summary judgment make this abundantly clear.  First, the aforementioned notification letter from Chancellor Michelle Rhee to Brewer, dated October 2, 2009, states in no uncertain terms that, although Brewer's "position at [DCPS] is being eliminated as part of a reduction in force[,]" Brewer "may be eligible to retire *in lieu* of being separated from service."  (RIF Notice at 2 (emphasis added).)  Then, the indisputably valid "Notification of Personnel Action" that is related to Brewer's employment and is dated November 22, 2009, contains the following notation in the "Nature of Action" field: "Retirement—Retire w/ Pay[.]"  (*See* Notification of Personnel Action, ECF No. 24-2 at

2 (documenting Brewer's choice to retire).)

In light of these documents—which unquestionably establish that Brewer retired from his position—this Court agrees with Defendants that Brewer "cannot claim an injury from a duty the District did not owe him as a matter [of] law." (Defs.' Mot. at 14.)  Put another way, even assuming arguendo that the District did not comply with its legal obligations to the RIF-separated teachers, Brewer was neither harmed by this failure nor stands to gain from its correction because he is not a RIF-separated teacher. Thus, under established standing doctrine, Brewer's interest in the District's compliance with the DCMR's protections for RIF-separated teachers is no different than that of any other member of the public, *i.e.*, Brewer lacks standing to sue.  *See United States v. Richardson*, 418 U.S. 166, 177 (1974) (noting that an injury cannot serve as the basis of standing where the injury is "plainly undifferentiated and common to all members of the public" (internal quotation marks and citation omitted)); *see also Lujan*, 504 U.S. at 576 (noting that "[v]indicating the public interest (including the public interest in Government observance of the . . . laws) is the function of Congress and the Chief Executive[,]" not the judiciary (emphasis in original)); *cf. Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004) (discussing, in the prudential standing context, "'the general prohibition on a litigant's raising another person's legal rights'" (quoting *Allen*, 468 U.S., at 751)).

Undaunted, Brewer responds that, notwithstanding the fact that he opted to retire, the record demonstrates that he retired *as a result* of receiving Rhee's letter announcing that he was subject to the RIF, and thus he too should be deemed RIF-separated for the purpose of being able to maintain this action.  (*See* Pl.'s Resp. at 9

(asserting that, under these circumstances, "Plaintiff was constructively terminated").)

This argument is unavailing because, even if the letter Brewer received was coercive

insofar as it "implied that he had to accept voluntary retirement to receive his annuity"

(*id.*), reams of past precedent establish that such threats are not dispositive of the issue

of whether a former employee is considered to have voluntarily retired.  *See Lebrun v.*

*England*, 212 F. Supp. 2d 5, 18 (D.D.C. 2002) (quoting *Christie v. United States*, 207

Ct. Cl. 333, 339 (1975)) (explaining that "court[s] ha[ve] repeatedly upheld the

voluntariness of resignations where they were submitted to avoid threatened termination

for cause"); *see also, e.g.*, *Keyes v. District of Columbia*, 372 F.3d 434, 439–40 (D.C.

Cir. 2004) (finding that employee was not forced into involuntary retirement where she

was faced with the choice of remaining an employee and fighting charges on which her

proposed termination was based or taking early-out retirement); *Welter v. City of Elgin*,

No. 12cv6837, 2013 WL 1337347, at *4 (N.D. Ill. Mar. 29, 2013) (similar).  Indeed,

quite to the contrary, "'a retirement request initiated by an employee is presumed to be

a voluntary act,'" *Keyes*, 372 F.3d at 439 (quoting *Schultz v. U.S. Navy*, 810 F.2d 1133,

1135 (Fed. Cir. 1987)), and in order "[t]o transform an offer of early retirement into a

constructive discharge, a plaintiff must show that the offer was nothing more than a

charade, that is, a subterfuge disguised to purge plaintiff from the ranks[.]" *Aliotta v.*

*Bair*, 576 F. Supp. 2d 113, 122 (D.D.C. 2008) (internal quotation marks and citation

omitted)).  Brewer has made no such showing here.

The facts of *Aliotta v. Bair*, help to illustrate the point.  *See id*.  There, former

employees of the Federal Deposit Insurance Corporation (FDIC) brought a class action

against the agency alleging violations of the ADEA due to a RIF.  Prior to the RIF, the

FDIC had offered its employees a "buyout" option, pursuant to which the agency offered employees "a cash payment equal to 50% of annual salary," as well as "the ability to combine the buyout with early or regular retirement agreements," *id*. at 116, and "[s]ome of the plaintiffs accepted buyout incentives combined with normal or early retirement packages[,]" *id*. at 120.  The *Aliotta* court concluded that the plaintiffs who had accepted the buyout incentives combined with normal or early retirement had not suffered an adverse employment action and therefore could not make a prima facie discrimination case because "the plaintiffs' change in status was *not* a management decision"—"[i]t was their own." *Id*. at 120–21 (emphasis added).  And when "[tthe plaintiffs insist[ed] that the buyouts were involuntary because they were faced with an impossible choice between accepting a severance package or fac[ing] a greater than 50% prospect of involuntary termination [in the RIF] with no early retirement or incentive payment[,]" *id*. at 121 (internal quotation marks and citation omitted), the *Aliotta* court squarely rejected that argument, finding instead that "a decision between early retirement and the risk of termination in a downsizing or reorganization is not sufficiently terrorizing to make acceptance of the early retirement incentive categorically involuntary[,]" *id*.

So it is here.  In a downsizing, "[e]arly retirement is a common corporate practice utilized to prevent individual hardship" and the practice is "well accepted by both employers and employees, and is purely voluntary." *Coburn v. Pan Am. World Airways, Inc.*, 711 F.2d 339, 344 (D.C. Cir. 1983).  Although Brewer nevertheless argues that he was constructively terminated as a result of Rhee's allegedly threatening RIF-separation letter, this Court concludes (as many have before it) that the mere fact

that a "plaintiff was faced with an inherently unpleasant situation" due to a "choice [that] was arguably limited to two unpleasant alternatives does not obviate the voluntariness of [his or her] resignation." *Lebrun*, 212 F. Supp. 2d at 18 (internal quotation marks and citation omitted).  This means that the fact that Brewer received a letter that might be interpreted as threatening termination at the risk of losing his annuity does not create a genuine issue of material fact regarding whether or not his decision to retire was voluntary.  And having voluntarily chosen to retire, Brewer lacks standing to challenge the District's failure to implement the procedures to which RIF-separated teachers are entitled.  *See Linda R.S. v. Richard D.*, 410 U.S. 614, 617 (1973) (noting that, in order to have standing, a "plaintiff[] must allege some threatened or actual injury resulting from the putatively illegal action").

## III.    CONCLUSION

This case is resolved at its threshold, essentially based on first principles.  Issue preclusion prevents the relitigation of already-decided matters, and thereby fulfills "the purpose for which civil courts had been established[:] the conclusive resolution of disputes within their jurisdiction." *Kremer,* 456 U.S. at 466 n.6.  Likewise, standing doctrine ensures that this Court's jurisdiction is reserved for actual cases and controversies, and thus "serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore*, 495 U.S. 155.  Brewer, via his Union, previously had a full and fair opportunity to litigate the question of whether the 2009 DCPS employment action was a RIF or a pretext for age discrimination, and the Superior Court not only determined that issue (it found that the terminations were a RIF because they were precipitated by budget necessity), but also rendered a final judgment

in the District's favor that relied on its determination.  What is more, the record is clear that Brewer did not leave his teaching job pursuant to the RIF; instead, he opted to retire, and as a result, he lacks standing to claim that Defendants failed to provide the RIF-separated teachers with the procedural protections described in the DCMR.

Consequently, as set forth in the order this Court has already issued, the dispositive motions that the District and the Individual Defendants have filed are **GRANTED**, and this case is **DISMISSED**.

DATE:  May 22, 2015

*Ketanji Brown Jackson*
KETANJI BROWN JACKSON
United States District Judge